**Mircea Alvin NASTU, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 58059.**

Court of Criminal Appeals of Texas, Panel No. 3.

Oct. 3, 1979.

Rehearing En Banc Denied Nov. 28, 1979.

Marvin O. Teague, on appeal only, Houston, for appellant.

Carol S. Vance, Dist. Atty., Alvin M. Titus and Don Stricklin, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

Before ODOM, PHILLIPS and W. C. DAVIS, JJ.

## OPINION

ODOM, Judge.

This is an appeal from a conviction for possession of heroin. Punishment was assessed at 20 years' imprisonment and a $10,000 fine. Appellant asserts error was committed when the trial court refused to exclude evidence seized as the result of allegedly improper searches, refused to sustain his challenge for cause to a prospective juror, admitted certain oral statements made after arrest, refused to dismiss the indictment when it was learned the police had destroyed certain evidence, and refused to grant a mistrial after improper jury argument.

At 10:00 a. m. on August 11, 1975, Houston police officer Thomas, operating undercover, received information from a confidential informant that appellant was going to bring a large quantity of heroin to his apartment for the purpose of cutting and bagging it. Thomas had never seen appellant but had been getting information about him from this informant since February. He had been told that Nastu was a Turkish-American with a wife from Thailand and that he obtained his heroin by making trips to Thailand, buying the heroin and shipping it back through Hong Kong in stereo equipment. Thomas had begun his investigation of Nastu at that time and learned that he had been checking in and out of hotels and motels and changing rent cars. On the eleventh, the informer told Thomas that Nastu had just arrived back from Thailand and had bragged about picking up 2.2 pounds of heroin. The informant stated that appellant did not keep a large amount of heroin in his house. He described Nastu as a short, fat, Turkish-looking man with no teeth in his head who dressed shabbily and who stared at everyone with piercing eyes. The informer stated that

appellant would be arriving at his apartment in the late afternoon carrying a large amount of heroin for the purpose of cutting it and that he usually carried his heroin in a suitcase. Thomas also testified that the informer stated that Nastu bragged about a machine gun and that the informer had seen a machine gun in Nastu's apartment.

Thomas went to the apartment complex where appellant lived to wait for him. While checking out the apartment complex's parking lot, he saw a rent car in the parking slot for appellant's apartment. He called the apartment to see if anyone was home and there was no answer. The officer waited from approximately 4 p. m. until 7 p. m. when a yellow cab bearing appellant and his wife pulled into the parking lot and stopped behind the rent car. As appellant and his wife got out of the right hand passenger door, Thomas walked by on the sidewalk approximately 10 or 15 feet away. Appellant was carrying in his right hand a blue woman's overnight suitcase, and in the crook of his left elbow, a mortar and pestle and a large paper bag. He put the mortar and pestle on the trunk of the rent car and stuck his hand in the paper sack and stared at Thomas. His hand pulled a little way out of the bag so that the officer could see the butt of a large caliber revolver which Nastu was pointing at him while keeping it largely concealed in the sack. Thomas walked on by and as he walked away Nastu opened the trunk of the rent car and put the mortar and pestle and the overnight bag into it. When Nastu walked around the cab and began paying the cab driver, Thomas turned around and walked up to him—whereupon appellant stuck his hand back in the bag. Thomas asked him where the apartment manager's office was. Nastu stared at him for a few seconds, took his hand from the bag and turned as if to point. The officer then drew his pistol and told Nastu he was under arrest. A furious struggle ensued. Nastu stuck his hand back in the bag but Thomas grabbed his hand and he dropped the bag. Thomas threw him across the hood of the cab, stuck the gun to the head of the screaming and struggling Nastu and told him to hold still.

Eventually appellant was subdued with the help of the apartment complex's security guard who was attracted by the commotion. Appellant's wife ran to their apartment when the struggle began. The officer and the security guard dragged appellant to the apartment manager's office where they handcuffed him and read him his rights. In the parking lot, Thomas had removed methadone, 77 white pills, a bag of marihuana, $770 in cash and the car keys from Nastu's pockets. He also found a 357 magnum pistol in the paper bag. The paper bag was left behind but Thomas went to get it after appellant was handcuffed and found some clothes and food. He called the police dispatcher for help. Officer Thomas testified that, after he made the phone call, appellant attempted to bribe him by offering to give him up to $4,000 in cash and a pound of heroin that he had as well as the pistol. The security officer testified that he too had been offered a bribe of $1,000 for release and overheard Nastu attempt to bribe Thomas. The officer sent the security guard out to watch the car while he called once again for help. He testified that he became worried about being there alone because appellant's wife was still at large and he remembered being told by his informant that Nastu kept a machine gun in his apartment. He decided to get the heroin out of the car and took Nastu to the car and opened the trunk using the keys. Thomas opened the overnight bag and found 4 one ounce bags of heroin underneath the cosmetic tray. He asked Nastu where the rest was and appellant replied, "Stupid, there is a pound of heroin in that bag." Thomas looked further and found a larger sack of heroin further down in the overnight bag. As the officer prepared to leave, additional police began to arrive on the scene and he felt relieved of the necessity of leaving.

Thomas asked appellant if the police could have permission to search his apartment. Appellant agreed on the condition that he be allowed to go to the door first and talk through it to his wife to calm her down. He was allowed to do this and the officers entered the apartment. He later

signed a written consent form as well. Approximately $4670 was found in the apartment as well as a number of bottles of methadone.

■ Appellant asserts that the heroin found in the trunk of the car should have been excluded from evidence as it was the fruit of an unlawful warrantless search. It is well established that a search conducted without a warrant issued on probable cause is *per se* unreasonable and that the warrant requirement is subject only to a few well-delineated exceptions. *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). One of these exceptions arises, under certain circumstances, when there is probable cause to search an automobile. *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1924). This exception exists in part because the circumstances that furnish probable cause to search a particular auto are most often unforeseeable and the opportunity to search is fleeting since a car can be readily moved. *Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). But this exception is not absolute. *Chambers* and *Carroll* teach us that the expectation of privacy, and hence the protection afforded it, is lower in automobiles than it is in houses or offices. But automobiles are still protected by the Fourth Amendment and there must be probable cause to search *and* exigent circumstances which make acquisition of a warrant impracticable in order to search without one. *Scott v. State,* 531 S.W.2d 825 (Tex.Cr.App.); *Reed v. State,* 522 S.W.2d 916 (Tex.Cr.App.). When one of these elements is not present, the warrantless search is unlawful and the evidence obtained as a result of that search must be excluded. *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *Maldonado v. State,* 528 S.W.2d 234 (Tex.Cr. App.); *Stoddard v. State,* 475 S.W.2d 744 (Tex.Cr.App.).

"The question of whether a warrantless search is constitutionally valid can only be decided in terms of the concrete factual situation presented by each individual case." *Rivas v. State,* 506 S.W.2d 233, 235 (Tex.Cr.App.).

■ In the instant case, Thomas went to the apartment complex to investigate a tip from an informer who had given him reliable information in the past. The information was that Nastu was bringing a relatively large quantity of heroin to his apartment for the purpose of cutting it. The informant described Nastu carefully in appearance and mode of dress and the fact that he routinely carried the heroin in a suitcase. Nastu appeared at approximately the time he was supposed to according to the informant and matched in every particular the description given by the informant. He was also carrying a woman's overnight bag and a mortar and pestle. He was observed to place the bag in the trunk of the car. There is some question whether the information given was adequate to give rise to probable cause to search or arrest absent additional information to insure reliability such as how the informant came by this information. See *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). However, hearsay information, inadequate to constitute probable cause by itself, can become sufficient if corroborated by independent observation of the arresting officer provided the information is detailed enough and adequately corroborated by observation. *Draper v. United States,* 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1958); *Rivas v. State,* supra. There is also some question whether the corroborated details available to the officer before his contact with Nastu were adequate to give rise to probable cause to arrest for narcotics possession. However, this is not all Officer Thomas had to go on. As he walked by appellant, Thomas saw him in possession of a pistol. This gave rise to probable cause to arrest appellant for carrying a pistol. After the arrest, further information came forth when appellant tried to bribe him with both cash and heroin which gave Thomas probable cause to search for narcotics. Whether Nastu said he would give the officer heroin he had in the car, as Thomas testified at the suppression hearing, or whether he merely

said he had dope that he would give him, as he testified at trial, the additional information conveyed by the bribe attempt provided further corroboration of the informant's tip, corroboration, indeed, of the central and most important part of the informant's information, that Nastu possessed heroin. Thus, an informant who had proven reliable in the past had given detailed information which had been borne out in almost every detail, including the central fact of narcotics possession. All that remained was to determine if the heroin was being carried in the overnight bag as the informer had said was appellant's custom. Officer Thomas had seen Nastu put the bag into the car and had probable cause to search the car.

▇ Our inquiry does not end here. As there must be probable cause to conduct a warrantless search of a vehicle, so must there also be exigent circumstances which make obtaining a warrant impracticable. These circumstances were absent in *Coolidge v. New Hampshire,* supra.

"The word 'automobile' is not a talisman in whose presence the Fourth Amendment fades away and disappears. And surely there is nothing in this case to invoke the meaning and purpose of the rule of *Carroll v. United States* —no alerted criminal bent on flight, no fleeting opportunity on an open highway after a hazardous chase, no contraband or stolen goods or weapons, no confederates waiting to move the evidence, not even the inconvenience of a special police detail to guard the immobilized automobile. In short, by no possible stretch of the legal imagination can this be made into a case where 'it is not practicable to secure a search warrant,' and the 'automobile exception,' despite its label, is simply irrelevant." 403 U.S. at 461–62, 91 S.Ct. at 2035–36.

In the instant case Nastu was under arrest and the automobile was being watched by the apartment security guard which would seem to place it close to *Coolidge.* However, Thomas testified that he decided to get the heroin out of the trunk, where he thought it was, and get away from the area

because his informant had told him that appellant had had a machine gun in his apartment. Everything the informant had told him had so far proven to be accurate, and Nastu's wife had fled in the direction of the apartment. We have to view the situation from the standpoint of the officer and cannot impose on him unrealistic prescience about the behavior of Nastu's wife. She was pregnant and it is highly unlikely that a pregnant woman would emerge from the apartment to rescue her husband with machine gun blazing but the officer did not act in an unreasonable manner in taking steps to see that this supposition did not become enshrined as an addition to the corpus of famous last words. Unlike *Coolidge,* there was the possibility that the opportunity to search would be fleeting. If he was driven off by gun fire or killed, the car could be driven away. There was the possibility that an alerted confederate, known to be in the area, could move the evidence if the officer merely took his prisoner and withdrew, and there was no police help around to establish a special guard on the car. In *Coolidge* the auto's mobility was not a factor, the defendant was under arrest, his wife was miles away in the company of police, and the car was under police guard. We determined in *Stoddard v. State,* 475 S.W.2d 744 (Tex.Cr.App.), that there were insufficient exigent circumstances to make the obtaining of a warrant impracticable. The defendant was arrested in his office and taken away, the car was located outside of the building and was under guard at all times. In both cases a warrant *was* obtained but it proved to be defective. In *Maldonado v. State,* 528 S.W.2d 234 (Tex.Cr.App.), the defendant was arrested and spent several hours clearing up a traffic violation during which time his truck was in police hands. The search of the immobilized vehicle at the police station was held to be unlawful. In the case before us the mobility of the car was a factor that still had to be considered.

▇ In the instant case a single officer faced with what he believed was and could potentially have been a dangerous situation

took steps to search for and seize evidence of the crime. The exigencies of the situation as it appeared at the time made it impracticable to go for a warrant without risking removal of the evidence. The search was lawful. The third ground of error is overruled.[1]

In ground of error number four appellant asserts that the trial court committed reversible error when it admitted evidence seized during the search of appellant's apartment. After his arrest, appellant was asked if he would consent to a search of his apartment. He said he would if he was first allowed to talk through the apartment door to his wife in order to calm her down. This was agreed to and the officers and appellant entered the apartment. Present at the time consent to search was given were Thomas, the apartment security guard and two patrol officers who had arrived in response to Thomas' call. Other officers arrived 15 or 20 minutes later with written consent to search forms which Nastu signed. The consent to search form included a statement that appellant had been informed of his constitutional right not to have a search made.

 It is the right of every citizen to be secure in his home from warrantless searches in all but a few instances. However, "[o]ne of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent." *Kolb v. State*, 532 S.W.2d 87, 89 (Tex.Cr.App.). But before consent can be effective, the prosecution must prove by clear and convincing evidence that the consent was given freely and voluntarily. *Bumper v. North Carolina*, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968); *Armstrong v. State*, 550 S.W.2d 25 (Tex.Cr.App.); *Kolb v. State*, supra.

"Whether a consent to search was voluntary is a question of fact to be determined from the totality of the circumstances." *Brem v. State*, 571 S.W.2d 314, 319 (Tex.Cr.App.). *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).

 Appellant was in custody at the time his consent was given but this does not necessarily prevent free and voluntary consent. *Armstrong v. State*, supra at 32. It is merely one of the factors to be considered. It is apparent that Nastu gave his consent freely on the condition that he could calm his wife who did not speak English and was probably frightened by all that had happened. Such an arrangement does not constitute coercion and his concern for his wife does not render the search involuntary. See *Rice v. State*, 548 S.W.2d 725 (Tex.Cr.App.); *Roberts v. State*, 545 S.W.2d 157 (Tex.Cr.App.). The second and fourth grounds of error are overruled.

 Appellant asserts that error was committed when the trial court denied a challenge for cause against a prospective juror who indicated that she could not consider the minimum sentence in the case of an adult guilty of possession of heroin. The record, however, reflects that this prospective juror did not serve on the jury, and the record fails to show that appellant used one

---

1. This search may have been invalidated and the evidence excluded under the holdings of recent Supreme Court decisions involving luggage found in automobiles. See *Arkansas v. Sanders*, —— U.S. ——, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979); *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977). However, this search and seizure took place before either of these decisions was handed down and the exclusionary rule is not retroactive if "the law enforcement officers reasonably believed in good faith that evidence they had seized was admissible at trial." *United States v. Peltier*, 422 U.S. 531, 537, 95 S.Ct. 2313, 2317, 45 L.Ed.2d 374 (1975). Before *Chadwick*, there was little question that lug-gage found in automobiles was included within the automobile exception to the Fourth Amendment's warrant requirement as was made clear in *United States v. Montgomery*, 558 F.2d 311 (5th Cir. 1977) where the U.S. Court of Appeals for the Fifth Circuit held *Chadwick* to be prospective in effect only. Thus, Officer Thomas could reasonably have believed that his search was lawful under the circumstances. We will not apply *Chadwick* and *Sanders* retroactively to this case. See also, *Kemner v. State*, 589 S.W.2d 403; *Todd Shipyards Corp. v. Secretary of Labor*, 586 F.2d 683 (9th Cir. 1978); *United States v. Berry*, 571 F.2d 2 (7th Cir. 1978).

of his peremptory challenges to strike her, that he requested and was denied an additional peremptory challenge, or that he was forced to accept a juror objectionable to him against whom he would have exercised a peremptory challenge. No reversible error is shown. *Smith v. State,* 573 S.W.2d 763 (Tex.Cr.App.); *Hernandez v. State,* 563 S.W.2d 947 (Tex.Cr.App.).

■ Appellant complains about the introduction at trial of two statements in violation of Art. 38.22, V.A.C.C.P. He asserts the bribe attempt should have been suppressed along with appellant's statement, "Stupid, there's a pound in that bag," made while Officer Thomas was going through the overnight bag. The first statements were made spontaneously by appellant in the excitement of the moment and were not the result of questioning. They were admissible under the "res gestae" exception of Art. 38.22 as then in effect. The second statement led to discovery of more heroin packed deeper in the overnight bag, and thus was within the exception for oral statements that lead to evidence conducive to establishing guilt. The fifth ground of error is overruled.

■ Appellant asserts error was committed when the judge refused to suppress testimony about certain items of evidence that were accidentally destroyed or sold at auction. The items were tagged together in the police property room and consisted of the pistol taken from appellant, the suitcase that the heroin was carried in, appellant's wallet and fake identification, and the non-narcotic evidence found in appellant's apartment. Appellant claims the State deliberately suppressed this evidence and that the indictment should be dismissed or the case reversed and remanded for a new trial. We disagree. The State introduced testimony by its officers, including the police sergeant who ordered the destruction, which indicated the destruction was entirely the result of a mix-up in the police property room and was carried out without the knowledge of those involved in the trial. The situation is similar to that in *Penix v. State,* 488 S.W.2d 86 (Tex.Cr.App.), where the defendant was accused of narcotics possession. When he was arrested, the narcotics were in a number of small bags contained in a larger potato chip bag. Police threw away the bag because it was torn and soggy and they did not believe it was important. The defendant objected to introduction into evidence of the narcotics exhibit because a portion of it (the potato chip bag) had been "deliberately suppressed by the State." We stated:

> "We find no deliberate suppression by the state. Further, no bad faith on the part of the prosecution is shown and nothing is shown that would affect the disposition of the case; i. e., there is no showing that appellant was deprived of a fair trial." *Penix,* supra, at 89.

In this case too, the evidence that was destroyed was merely incidental to a case where appellant was caught red handed with nearly a pound of heroin and other narcotics, all of which was available at trial. Furthermore, appellant has failed to make a demonstration of the key elements necessary in any suppression of evidence claim which are, (1) suppression of evidence by the prosecution after a request by the defense, (2) the evidence's favorable character for the defense, and (3) the materiality of the evidence. *Ransonette v. State,* 550 S.W.2d 36, 39 (Tex.Cr.App.); *Young v. State,* 552 S.W.2d 441, 443 (Tex.Cr.App.).

> "The standard to be applied in cases of suppression or nondisclosure of evidence by the State is whether the testimony may have had an effect on the outcome of the trial." *Ransonette,* supra at 39.

Appellant made no such showing. The sixth and seventh grounds of error are overruled.

■ In his final ground of error appellant complains of a statement made by the prosecutor during his final argument. He did not obtain a ruling on his objection nor did he ask for a mistrial, so nothing is preserved for review. *Hollis v. State,* 509 S.W.2d 372 (Tex.Cr.App.); *Broussard v. State,* 505 S.W.2d 282 (Tex.Cr.App.); *Cherry v. State,* 488 S.W.2d 744 (Tex.Cr.App.).

The eighth and ninth grounds of error are overruled.

The judgment is affirmed.