**Livingston MARTIN aka Livingston Mouton, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 60039.**

Court of Criminal Appeals of Texas, Panel No. 3.

Dec. 17, 1980.

Rehearing Denied Feb. 4, 1981.

Joe B. Goodwin, Elmo R. Willard, III, Beaumont, for appellant.

James S. McGrath, Dist. Atty. and John R. DeWitt, Asst. Dist. Atty., Beaumont, Robert Huttash, State's Atty., Austin, for the State.

Before ROBERTS, ODOM and PHILLIPS, JJ.

## OPINION

ODOM, Judge.

This is an appeal from a conviction for murder. Punishment was assessed at 25 years.

■ The third ground of error challenges the sufficiency of the evidence. Appellant was convicted for the murder of his wife. Her body and the body of their adult daughter were found in the trunk of a partially submerged automobile. Appellant was hitchhiking nearby and was given a ride by two men who testified at trial that his pants were wet from the waist down. A slug removed from the body of one of the victims was shown to have been fired from a pistol that was owned by appellant and was shown to have been in his possession shortly after the offense. We find this evidence sufficient to support the conviction.

The first two grounds of error are based on a challenge to the search of the house where appellant and the murder victims lived. The first ground of error asserts the evidence seized in the search of the house should have been suppressed because the search was unlawful. The second ground of error argues the in-court identifications of appellant by the two men who gave him a ride should have been suppressed because those witnesses had previously identified appellant in photographs seized in the challenged search.

At trial appellant filed a motion to suppress the seized evidence and the identification testimony on the theory that the search was conducted without a warrant and without consent. In *Nastu v. State*, 589 S.W.2d 434, the Court said:

"It is well established that a search conducted without a warrant issued on probable cause is *per se* unreasonable and that the warrant requirement is subject only to a few well-delineated exceptions. *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).

\* \* \* \* \* \*

"However, '[o]ne of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent.' *Kolb v. State*, 532 S.W.2d 87, 89 (Tex.Cr.App.). But before consent can be effective, the prosecution must prove by clear and convincing evidence that the consent was given freely and voluntarily. *Bumper v. North Carolina*, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968); *Armstrong v. State*, 550 S.W.2d 25 (Tex. Cr.App.); *Kolb v. State*, supra.

" 'Whether a consent to search was voluntary is a question of fact to be determined from the totality of the circumstances.' *Brem v. State*, 571 S.W.2d 314, 319 (Tex.Cr.App.). *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973)."

These words from *Nastu* speak to the issue before us today. The search under attack was conducted on the afternoon of the two murders. Appellant resided in the house that was searched. Also living there were the two murder victims and Kimberly Webster, who gave consent to enter and search the house.

■ Officers were waiting at the house when Kimberly and her younger sister came home from school on the afternoon of the murders. When the issue of the lawfulness of the search was heard by the trial court, Kimberly testified that she consented to the search of the house and that she signed a written consent to search. The signed consent was written out by James Smith (described by Kimberly as her mother's best friend's husband) and dictated by Officer Branch, who also knew Kimberly. When Kimberly testified the questions did not ask and the answers did not show that her consent was involuntary in any way. Neither did Branch's testimony show any coercion. This record is sufficient to support a finding by the trial court, by clear and convincing evidence, that Kimberly's consent was given freely and voluntarily. This was adequate to establish an exception to the warrant requirement.

■ On appeal additional challenges to the lawfulness of the search are raised. It is asserted that Kimberly did not have authority to consent to a search of the room appellant occupied in the house. Some of the evidence was seized in his room and some in other parts of the house. No objection was made at trial directing the court's attention specifically to those items seized from appellant's room, nor was objection made to Kimberly's authority to consent to a search of that particular room. Consequently, the record was not developed with attention on this issue. Nothing is presented for review in this matter. See *Morrison v. State*, 508 S.W.2d 827, n. 4.

■ The same result must be reached as to appellant's argument, raised for the first time on appeal, that fifteen-year-old Kimberly was too young to consent to the search. Because the record was not developed on this issue we do not know if the officers knew whether anyone older than Kimberly resided at the house (they already knew Kimberly's mother and grandmother had been shot). Neither do we know what other facts might have been developed had the issue been raised at trial. Because this issue was not raised at trial, we hold it may not be raised at this time.

Furthermore, it appears the search conducted here was of the murder scene. Although the record is not fully developed, it appears that the "common law 'exigency rule' " of *Brown v. State*, 475 S.W.2d 938, 948–950, and *Pearson v. State*, 587 S.W.2d 393, would apply because the search and trial in this case occurred before the decision in *Mincey v. Arizona*, 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978). *Pearson, supra.*

The first and second grounds of error are overruled.

The judgment is affirmed.

PHILLIPS, Judge, dissenting.

In affirming the appellant's conviction, the majority brushes aside constitutional error in a warrantless search and holds that the officers' search of appellant's residence was valid. In so doing, the majority ignores the circumstances surrounding the "voluntary" consent to search.

Because the circumstances of this warrantless search are critical, emphasis on relevant facts is necessary. At approximately 1:30 p. m. on February 6, 1976, the bodies of two females, appellant's wife and grown daughter, were found in the trunk of a car. Both had been shot. Seeking the original location of the murders, several officers proceeded to appellant's home. Once there, the officers waited for the appellant's grandchildren to return home from school. According to testimony at trial, the officers never attempted to obtain a search warrant.

Somewhere between 3:00 and 3:30 p. m., the two grandchildren approached the house. The officers asked them several questions concerning their identity and where they lived. Finally the officers told the children that their mother and grandmother had been killed. Officer Branch, who knew the family, testified that the girls became upset and started crying. An officer then asked the oldest child, Kim, who was 15 years old, if they could search the house. She said yes.

The children were taken to a friend of the family, a Mr. Smith. Officer Branch dictated a consent to search form to Smith and Kim signed it. The written consent form was taken to the police station.

The record does not reveal whether the search was conducted before or after the written consent. However, one officer testified that the search probably was conducted "before and after" the written consent. Among the items seized in the warrantless search of appellant's resident were: several blood samples taken from various parts of the house; a .38 caliber slug found in the garage; a knife with human blood stains on the handle; and several photographs of appellant, seized from appellant's trunk and used in a photographic display. In addition, the officers took several photographs of blood stains in the house. All of these items were admitted at trial over appellant's objections.

When consent to search is in issue, the burden is upon the state to prove by clear and convincing evidence that the consent was freely and voluntarily given. *Bumper v. North Carolina*, 391 U.S. 543 (1968); *Nastu v. State*, 589 S.W.2d 434 (Tex.Crim.App. 1979); *Ferguson v. State*, 573 S.W.2d 516 (Tex.Crim.App.1978). The state must show the consent given was positive and unequivocal, and there must not be duress or coercion, actual or implied. *Ferguson, supra; Evans v. State*, 530 S.W.2d 932 (Tex.Crim. App.1975).

Under the circumstances of this case, the state failed to establish a voluntary consent to search the house. Several officers questioned 15-year old Kim and her younger sister. The girls were told that both their mother and grandmother had been shot and killed. In the grief and shock that followed, the officers obtained an oral consent to search. Kim and her younger sister were then taken to a family friend, Mr. Smith. Officer Branch, a personal friend of the family, asked Kim to sign a written consent to search form. Branch dictated the consent form to Smith, Kim signed it, and Smith witnessed it. The consent form was signed less than an hour after Kim learned of the two murders. There is evidence which indicates that the search was commenced before the written consent was obtained. Under the circumstances, the officers' actions can only be viewed as psychologically coercive.

I would hold that the state failed to prove by clear and convincing evidence that the consent was freely and voluntarily given. Therefore, the warrantless search of appellant's house was unlawful, and the evidence obtained as a result of the search should have been suppressed. See *Gonzalez v. State*, 588 S.W.2d 355 (Tex.Crim.App.1979); *Hooper v. State*, 533 S.W.2d 762 (Tex.Crim. App.1976, Opinion on Appellant's Motion for Rehearing); compare *May v. State*, 582 S.W.2d 848 (Tex.Crim.App.1979); *Ferguson v. State*, 573 S.W.2d 516, 520 (Tex.Crim. App.1978).

In addition to the questionable "voluntariness" of the consent, there is the issue whether Kim had the authority to consent to a warrantless search of her grandfather's private bedroom.

The majority contends that the issue was not properly raised at trial and therefore is not before the Court. However, appellant made numerous objections and filed several motions to suppress regarding the evidence obtained in the search. In particular, appellant filed a motion to suppress the in-court identification of appellant based upon photographs seized from appellant's private bedroom. The motions and objections were overruled.

I cannot follow the majority's strict approach. It is my opinion that the appellant fairly raised the question of a third party's capacity to consent to the search of appellant's private bedroom. See *Darland v. State*, 582 S.W.2d 452 (Tex.Crim.App.1979); *Armstrong v. State*, 550 S.W.2d 25 (Tex. Crim.App.1977, Opinion on State's Motion for Rehearing); Article 40.09(9), V.A.C.C.P. Moreover, the issue is of sufficient constitutional magnitude to require review in the interest of justice. Article 40.09(13), V.A.C. C.P.; *Armstong, supra*. Such constitutional issues should not be summarily dismissed, but resolved. *Deal v. State*, 508 S.W.2d 355 (Tex.Crim.App.1974).

Finally, I note that whatever reliance the majority places on the "murder scene exception" to the warrant requirement is wholly unwarranted for the reasons expressed in my dissent to *Pearson v. State*, 587 S.W.2d 393, 396 (Tex.Crim.App.1979).

For these reasons, I dissent.