**Raymond Diaz BERNAL and Robert Nuncio, Appellants,**

v.

**The STATE of Texas, Appellee.**

Nos. 04–81–00211–CR, 04–81–00212–CR.

Court of Appeals of Texas,
San Antonio.

Dec. 15, 1982.

Rehearing Denied March 1, 1983.

Lawrence J. Souza and George Scharmen, San Antonio, for appellant in No. 211.

F. Terry Callahan, San Antonio, for appellant in No. 212.

Bill White, Dist. Atty., Jerry Rosson, Asst. Dist. Atty., San Antonio, for appellee.

Before CADENA, C.J., and CLARK, and CANTU, JJ.

## OPINION

CANTU, Justice.

These appeals are taken from convictions of rape. Appellants were tried jointly, and after conviction by a jury elected to have the trial court assess punishment. Each was sentenced to 20 years' confinement.

Four of the contentions raised by appellants are identical in both appeals: they allege that a watch, a ring, clothing of the appellants, and their persons were seized as a result of an illegal search and improperly used as evidence; that the trial court improperly allowed the State to bolster the identification testimony of an unimpeached witness; that there were two instances of

juror misconduct necessitating a new trial; and that the prosecutor committed several acts of misconduct. Additionally, appellant Bernal alleges that the trial court erred in refusing to give his requested supplemental charge to the jury after it had begun deliberations, and that the evidence is insufficient to sustain his conviction. We reject all of these contentions and affirm.

The complainant was a licensed vocational nurse at the Bexar County Hospital in San Antonio, where she was working on July 4, 1979. At approximately 2:00 a.m. that day she had gone from her work station on the ninth floor to the cafeteria on the first floor to get some beverages. When she got on the elevator to return to the ninth floor, a woman and two men joined her. Immediately after the other woman got off at the fifth floor and the elevator door had closed, appellant Nuncio came around from behind her, grabbed her and put his right hand over her mouth. He told her not to scream or he would hurt her. After ordering her to hand the drinks to Bernal, Nuncio told Bernal to get out his knife, but none was ever produced.

When the elevator door opened at the ninth floor, the men forced the complainant out of the elevator and then down a stairwell to the eighth floor. They then walked her into the men's restroom. While Bernal stayed at the door as a lookout, Nuncio ripped open the complainant's uniform and ordered her to remove the rest of her clothing. In short order, Bernal had sexual intercourse with her while Nuncio forced her to perform oral intercourse on him, and when Bernal said he had had enough, Nuncio had sexual intercourse with her. Nuncio then took her wedding ring and wrist watch and tied her up with her pantyhose. He told her that if she told anyone he would come back and "get her."

The complainant was able to untie her bonds, get dressed, and report the incident to a nurse on the eighth floor. The police were called and arrived within minutes.

Albert Martinez, a deputy sheriff on duty at the hospital that night, encountered two men loitering around the outside of the building prior to the rape. Martinez demanded identification and the larger of the two produced a military identification card showing him to be Robert Nuncio. On demand, he also gave Martinez an address on Cayton Street as his residence. When asked what they were doing there, Nuncio said he had a headache and wanted to go to the emergency room. Martinez directed the two toward the emergency room and they left. Martinez then noticed a 1955 to 1957 dark Chevrolet station wagon parked at the curb. It appeared disabled by an overheated radiator. The two men had been standing near the car when Martinez first saw them.

A few minutes later, Martinez received a radio call from another security officer that a rape had just taken place in the hospital. Martinez hurried to the eighth floor and met with San Antonio police officers there. Learning that the rapists had been described as two Latin American males in their early twenties, the larger of the two wearing a black and white striped T-shirt with a decal on it and jeans, Martinez realized that the descriptions matched the two men he had just encountered. He told the investigating officers of the encounter, giving them the name and address he had been given.

San Antonio police detective A.L. Domingues went to the Cayton Street address, meeting officer Robert Farley there. They asked for Nuncio, but were told that he did not live there. They were given, however, an address on Lux Street where he might be found, and were told that a Robert (sic) Bernal had been with Nuncio earlier.

The officers went to the Lux Street address, arriving at approximately 6:30 a.m. They met an officer Beckett there. The officers noticed a 1957 Chevrolet there that matched the description of the car near which deputy Martinez had seen the two men standing at the hospital. Alma Nuncio, later determined to be appellant Nuncio's wife, answered the door and, after the officers explained why they were there, she acted very cooperative and let them in. She led Domingues toward two bedrooms

and he saw one man asleep in each. They matched the descriptions given by the rape complainant and other witnesses, and near each man was a pile of clothing that appeared to match that worn by the rapists. They were awakened, warned of their rights, and subsequently were taken to the police station. After warning Bernal of his rights, Domingues asked him for the watch that had been taken from the complainant. Bernal reached into his pants pocket and gave Domingues a watch, which later proved to be the complainant's.

Domingues then spoke separately with appellant Nuncio, telling him that he had the watch and also relating all of the other information linking Nuncio to the offense. When Domingues asked for the complainant's ring, Nuncio denied knowledge of any ring, watch, rape or robbery. After both men had been placed in separate squad cars and Nuncio and his wife had spoken, Domingues was called back to the house by Alma Nuncio, who produced a ring from her purse and gave it to him. It was later identified by the complainant as hers.

Appellant Bernal testified in essence that the intercourse between Nuncio and the complainant had been consensual and that, when told by Nuncio that it was Bernal's "turn" with the complainant, Bernal only pretended to have intercourse with the complainant so that Nuncio would not get upset with him. Bernal denied having sexually penetrated the complainant.

Appellant Nuncio testified that the complainant had motioned to him to get on the elevator, and began acting in a friendly way toward him while they were on the elevator. Eventually, she supposedly agreed to go into the men's room with him for sex. He denied putting his hand over her mouth and further denied that she had been forced into anything. It was intimated in his testimony that the complainant gave him her watch and ring in recognition of his amatory prowess.

■ In their first ground of error, both appellants argue that the officers' entry into the house at 106 Lux Street was illegal, and that the persons of the appellants, their clothing, the watch and ring were thus inadmissible. Although there is reference in the record to some written motion in limine or to suppress such evidence, no such motion appears in the record before us. We do have before us, however, the objections of counsel made at the time of the hearing outside the presence of the jury, as well as those made before the jury when the evidence was offered. Only the issues raised in those objections and brought forward as assignments of error will be considered. *Hodge v. State*, 631 S.W.2d 754 (Tex.Cr. App.1982).

■ Regarding the contention that the persons of appellants, having been illegally seized, should have been suppressed, no such contention was made at trial. Further, no objection was made to the complainant's in-court identification of the appellants. Even if error had been preserved and the arrests were to be held unlawful, a defendant's physiognomy is not a species of evidence subject to the exclusionary rule of the Fourth Amendment to the United States Constitution. *United States v. Crews*, 445 U.S. 463, 477–479, 100 S.Ct. 1244, 1253–1254, 63 L.Ed.2d 537 (1980) (per five Justices in concurring opinions).

■ Analysis of the admissibility of the appellants' clothing and the complainant's watch and ring is controlled by different principles. Appellants both argue that this was not a situation in which there was a valid consent to search in that the State failed to prove by clear and convincing evidence that Alma Nuncio's consent was freely given, rather than being the result of acquiescence to a claim of police authority. Alternatively, they argue that the police actions amounted to nothing more than routine felony arrests, for which warrants were required. Since no arrest warrants were secured, the argument goes, the arrests were illegal and the physical evidence thereby obtained was tainted and inadmissible.[1]

---

1. For purposes of economy of effort, we preter-

mit lengthy discussion of the issue of "stand-

■ The record belies all of these contentions. First, the only evidence on consent to search came from the State's witnesses, appellants having chosen not to call Alma Nuncio as a witness. Detective Domingues stated that Mrs. Nuncio was very cooperative and understanding, and let him and officer Farley into the house and led them to the bedrooms where appellants lay sleeping. Domingues denied using any threats, coercion, or promises to secure her consent. He did admit on cross-examination that she had asked what would happen if the officers had to get a search warrant. He had responded that a search warrant issued by a San Antonio magistrate would direct that in the event the evidence to be searched for were found, all persons on the premises would be arrested. He specifically stated in his testimony, however, that this discussion did not occur until *after* Alma Nuncio had let him and Farley in and the appellants had been placed under arrest. After considering all of the evidence presented, we find that the State proved clearly and convincingly that Alma Nuncio freely and voluntarily gave consent for detective Domingues and officer Farley to enter the house at 106 Lux Street. *Martin v. State,* 610 S.W.2d 491, 492 (Tex.Cr.App.1980); *Nastu v. State,* 589 S.W.2d 434 (Tex.Cr.App. 1979), *cert. denied* 447 U.S. 911, 100 S.Ct. 3000, 64 L.Ed.2d 862 (1980).

■ We also reject the argument that the officers went to the house with the intent to make routine felony arrests, which required arrest warrants. All of the arguments by appellants regarding availability of magistrates and the authority of *Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980) and *Steagald v. United States,* 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981), ignore the most important point in the inquiry: the officers denied that their intention upon arriving at 106 Lux Street was to arrest anyone, because they did not believe they had probable cause. This unrebutted testimony dis-

arms the authoritativeness of *Payton* and *Steagald,* because in those cases it was clear that the purpose of the officer's entering the residence was to make an arrest. Also, it matters not whether there was a magistrate on duty, because the officers believed themselves to be without sufficient facts to swear out warrants of arrest.

■ Having held the officers' entry into the house lawful, we now deal in turn with the warrantless arrest of appellants and the seizure of the physical evidence admitted over objection at trial. As both sides agree that no warrants for the arrests of appellants were ever secured, the burden fell upon the State to show that the arrests were made upon a valid exception to the warrant requirement. *Wilson v. State,* 621 S.W.2d 799 (Tex.Cr.App.1981); *Hardison v. State,* 597 S.W.2d 355 (Tex.Cr.App.1980). In its brief, the State appears to argue that the arrests without warrant were justified under Tex.Code Crim.Pro.Ann. arts. 14.04 and 18.16 (Vernon 1977). The State is wrong on both counts, however.

Article 14.04, *supra,* states,

Where it is shown by satisfactory proof to a peace officer, upon the representation of a credible person, that a felony has been committed, and that the offender is about to escape, so that there is no time to procure a warrant, such peace officer may, without warrant, pursue and arrest the accused.

It has been the uniform holding in all cases applying this statute that a showing of "imminent escape" by the offender is a fundamental requirement if the State is to rely on article 14.04. *King v. State,* 631 S.W.2d 486, 497 (Tex.Cr.App.1982); *Honeycutt v. State,* 499 S.W.2d 662 (Tex.Cr.App. 1973).

■ In the *Honeycutt* case, the facts were very similar to those of this case. A private citizen had seen the defendant driving her automobile on a public highway in a

---

ing." The State understandably does not raise the issue as to whether Nuncio could complain of a search of his own house, and the State's argument that Bernal has no standing is clearly

wrong, since he had been asleep there for some time, obviously with Nuncio's permission. *See Rakas v. Illinois,* 439 U.S. 128, 140–143, 99 S.Ct. 421, 429–430, 58 L.Ed.2d 387 (1978).

manner that led him to believe she was intoxicated. He called the police, who arrived at the defendant's home, let themselves in, and found her lying awake fully dressed on her bed with her shoes off. Their warrantless arrest of her was held to be illegal, as there was no evidence whatsoever of any attempt to escape. We therefore must hold that article 14.04, *supra*, is not applicable to justify the warrantless arrests in this case, because the appellants were undressed and asleep immediately prior to being awakened and arrested. There was no indication at all that any escape was imminent.

■ Similarly, the statute empowering police officers to prevent the consequences of theft, Tex.Code Crim.Pro.Ann. art. 18.16 (Vernon 1977), does not apply, given the facts of this case. That statute provides,

All persons have a right to prevent the consequences of theft by seizing any personal property which has been stolen and bringing it, with the supposed offender, if he can be taken, before a magistrate for examination, or delivering the same to a peace officer for that purpose. To justify such seizure, there must, however, be reasonable ground to suppose the property to be stolen, and the seizure must be openly made and the proceedings had without delay.

In this case, no stolen property was found until *after* appellants already were under arrest. An arrest may not be retroactively justified by what evidence turns up as a result of the arrest. *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). We therefore hold that the arrests of the appellants were unlawful.[2] For reasons to be stated, however, we find no reversible error in the admission of the appellants' clothing and the complainant's watch and ring.

■ The appellants' clothing, which detective Domingues and officer Farley saw on the floor in the two bedrooms, was viewed by them while they were in a place where they had the right to be, the discovery of the clothing was inadvertent, and it was immediately apparent to the officers upon seeing the clothing that it was connected to a criminal offense. Under these circumstances, the officers were entitled to seize the clothing under the "plain view" doctrine of *Coolidge v. New Hampshire,* 403 U.S. 443, 465–471, 91 S.Ct. 2022, 2037–2041, 29 L.Ed.2d 564 (1971); *De la Rosa v. State,* 627 S.W.2d 207, 214–215 (Tex.App.—San Antonio 1981).

■ Having concluded that the clothing was properly seized, we further hold that the admission of the watch and ring into evidence was harmless error. The complainant positively identified both appellants as the men who attacked her, and there was no attempt to impeach the identification. They had been seen loitering outside the hospital minutes before the rape occurred, and were located by means of the name and address appellant Nuncio had given deputy sheriff Martinez. The clothing seized at the time appellants were arrested was identical to that described by Martinez and the complainant. Appellants admitted having been at the scene and having come into possession of the items. They merely denied having committed any crime. The admission of the watch and ring into evidence was harmless error beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *Holcomb v. State,* 484 S.W.2d 938 (Tex.Cr. App.1972), *cert. denied* 410 U.S. 940, 93 S.Ct. 1404, 35 L.Ed.2d 606 (1973). The first ground of error is overruled.

■ Appellant Bernal's second ground of error is that the trial court reversibly erred in refusing to give his requested sup-

---

**2.** Appellant Nuncio argues that since this was a "routine felony arrest," *Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), renders the arrest without warrant unlawful. Appellant Bernal, Nuncio's houseguest at the time of his arrest, bases his argument on *Steagald v. United States,* 451 U.S. 204, 101

S.Ct. 1642, 68 L.Ed.2d 38 (1981). We need not reach either of these constitutional arguments, however, as we resolve the legality of the arrests on strictly statutory grounds. *See Milton v. State,* 549 S.W.2d 190, 192 (Tex.Cr.App. 1977).

plemental charge to the jury. After retiring to deliberate, the jury sent out a note requesting that the court provide the jury with the portion of Bernal's testimony regarding his fear of Nuncio's getting violent if Bernal did not participate in the sexual incident. The jury also sent a note that said, "If Raymond was acting in fear or under undue stress or fear of injury by Robert—does this have any affect (sic) on the findings of the verdict?" After these notes were received by the court and shown to counsel, Bernal's counsel requested a supplemental charge on the law of duress, under Tex.Penal Code Ann. § 8.05(a) (Vernon 1974): "It is an affirmative defense to prosecution that the actor engaged in the proscribed conduct because he was compelled to do so by threat of imminent death or serious bodily injury to himself or another." Appellant Bernal's argument is without merit because he testified only that he was afraid Nuncio or the complainant "might get violent" if he did not "take his turn." There was no indication whatever that he had been threatened with imminent death or serious bodily injury. More importantly, Bernal denied having had sexual intercourse with the complainant, and thus did not raise the issue of his having "engaged in the proscribed conduct" because of duress. Bernal's second ground of error is overruled.

■ In Bernal's third and Nuncio's second ground of error, both contend that the trial court committed reversible error in failing to grant a mistrial for the bolstering of an unimpeached witness. This argument is based on the fact that a police officer testified that he had visited the appellants in jail and had told them that they were to appear in a lineup. Counsel for both appellants immediately objected on the ground of bolstering, but their objections were overruled and their mistrial motions denied.

*Lyons v. State,* 388 S.W.2d 950 (Tex.Cr. App.1965), relied on by appellants, is not in point. In that case, police officers were permitted to testify that the victim of the offense had identified the defendant in a police lineup, where there had been no

impeachment by the defense of the victim's in-court identification of the defendant. Here, there was no testimony that the complainant did make any out-of-court identification of the appellants. The testimony was only that they had been told they were to appear in a lineup. There was no bolstering. The grounds of error are overruled.

Bernal in his fourth ground of error and Nuncio in his third, raise allegations of jury misconduct. Each contends that the trial court should have granted a mistrial and a motion for new trial because a juror had been overheard during the trial telling his wife on the telephone that the appellants were "guilty as hell," and another instance in which a juror allegedly had been seen during the trial reading a newspaper which contained a story about evidence in the case which the trial court had ordered suppressed.

■ First, we observe that the contentions are multifarious and not in compliance with Tex.Code Crim.Pro.Ann. art. 40.09, § 9 (Vernon 1979), in that appellants argue two allegations under one ground of error. As we are able, however, to identify and understand the grounds of objection, we shall review them. *Id.*

The appropriate procedure for preserving for review allegations of jury misconduct is by motion for new trial. Tex.Code Crim. Pro.Ann. art. 40.03(7) and (8) (Vernon 1979). On examining the motions filed, we find that Bernal's motion alleges only the incident of the juror who telephoned his wife, and Nuncio's motion makes only a general contention, "There has been misconduct on the part of a juror that has prevented the Defendant from a fair and impartial trial." Neither motion is accompanied by a sworn affidavit establishing the occurrence of the alleged acts of misconduct.

■ A motion for new trial is not self-proving. *Schneider v. State,* 594 S.W.2d 415 (Tex.Cr.App.1980). Without presentation of a proper affidavit for consideration along with the motion, no error is preserved. *Zimmerman v. State,* 626

S.W.2d 849, 850 (Tex.App.—San Antonio 1981), and cases therein cited. There having been no such affidavits presented with the motions for new trial in this case, there can be no error in the trial court's overruling of the motions. The grounds of error are overruled.

In appellant Bernal's fifth ground of error, he contends that the evidence was insufficient to prove that he committed the offense. Bernal points to conflicting testimony by the complainant as to whether Bernal had had intercourse with her, the denial by Bernal that this happened, and the evidence of duress that was unrebutted.

 First, the complainant's testimony that Bernal had intercourse with her without her consent is not conflicting—she so stated and was unswerving in this. Bernal's denial created a fact issue that the jury resolved against him, as the jury had authority to do. Tex.Code Crim.Pro.Ann. art. 36.13 (Vernon 1981) and art. 38.04 (Vernon 1979). As for the evidence of duress, we again state as we did under Bernal's second ground of error that Bernal's testimony did not make out a case of duress. Under Tex.Penal Code Ann. § 8.05(a) (Vernon 1974), one must have actually engaged in the proscribed conduct to raise the issue of duress. Bernal denied having had sexual intercourse with the complainant and also denied that whatever did occur was without her consent. The ground of error is overruled.

Each appellant in his final ground of error raises several contentions of "prosecutorial misconduct." Again, these are presented in multifarious fashion in violation of Tex.Code Crim.Pro.Ann. art. 40.09, § 9 (Vernon 1979), but as we are able to understand the basis of objection, we shall discuss the merits. Counsel for both appellants are admonished to avoid such improper briefing in the future.

The contentions by both appellants are identical: the prosecutor improperly commented on the law of intoxication during voir dire examination of the jury panel even though appellants had elected to go to the trial court on punishment, he withheld information from appellants as to the complainant's having contracted a venereal disease as a result of the incident in question, and made an improper argument to the jury at the guilt-innocence stage of the trial as to the community's expectations regarding law enforcement. We reject each of these contentions.

 First, the statement about intoxication was made during the prosecutor's voir dire examination of the jury on the law that voluntary intoxication does not constitute a defense to the commission of a crime. See Tex.Penal Code Ann. § 8.04(a) (Vernon 1974). When the question was asked of the venire panel, counsel for both appellants objected that this injected extraneous offenses into the case, and prejudiced the jury panel.

We cannot see how this could be, as the question did not assert that the appellants *had* been intoxicated. The prosecutor stated for the record in a bench conference out of the hearing of the panel that the evidence might raise the issue. The subsequent testimony bears out this statement, as deputy sheriff Martinez testified that the breath of both appellants had smelled of alcohol when he encountered them outside the hospital shortly before the rape. The prosecutor obviously was trying to anticipate any use the defense might try to make of this fact as minimizing the culpability of appellants. He was entitled to question the panel to determine any bias or prejudice any prospective juror might have to the law relevant to the case, so as to be able to make appropriate challenge for cause. Tex. Code Crim.Pro.Ann. art. 35.16(b)(3) (Vernon 1966); *Bodde v. State,* 568 S.W.2d 344 (Tex. Cr.App.1978), *cert. denied* 440 U.S. 968, 99 S.Ct. 1520, 59 L.Ed.2d 784. The contention is overruled.

 Regarding the alleged suppression of the fact that the complainant had contracted gonorrhea, appellants contend that the State had denied having any such evidence when counsel for appellants requested it during a hearing outside the presence of the jury on the complainant's prior sexu-

al conduct. *See* Tex.Penal Code Ann. § 21.13 (Vernon Supp.1982–1983). On reading the testimony during the hearing, we find that appellant Nuncio's counsel asked whether the State had "anything in their files which would show the results of an investigation of the reputation in regard to this complaining Witness [sic] . . ." concerning her sexual conduct. The State's attorney responded that it was his understanding that her reputation was "great," and that she had never been in trouble before. Counsel again asked for records of any criminal offenses committed by the complainant and was told that none existed.

How the complainant's contracting of a venereal disease as a result of being raped by appellants can constitute an act of misconduct by her is beyond our powers to understand. Appellants' theory apparently is that they were entitled to this information in order to impeach the complainant, and that the State improperly suppressed it. Because no basis exists in law or logic for the use of this fact as impeachment, we reject the contention.

In his final argument to the jury at the guilt-innocence stage of the trial, the prosecutor stated, "Ladies and gentlemen, you are the last link in the line of law enforcement. The police and Sheriff's Department can only do so much. The prosecutors can only do so much." There was then an objection that what police and prosecutors can do is evidence outside the record. The objection was overruled.

One of the appropriate subjects for final argument by the State is a plea for law enforcement. *Alejandro v. State,* 493 S.W.2d 230 (Tex.Cr.App.1973). The argument complained of was a proper plea for law enforcement. *Haynes v. State,* 627 S.W.2d 710 (Tex.Cr.App.1982); *Chatman v. State,* 509 S.W.2d 868 (Tex.Cr.App.1974). The grounds of error are overruled.

One further matter, not raised in the briefs of counsel, requires our attention. Both appellants were indicted for and convicted of rape, a second-degree felony carrying a range of punishment of not more than 20 years or less than two years, and a possible fine not to exceed $10,000. Tex.Penal Code Ann. §§ 21.02(c) and 12.33(a) and (b) (Vernon 1974). The sentences in these cases, however, state the indeterminate sentence as being not less than five nor more than 20 years. This is obviously erroneous. Accordingly, we reform the sentence in each case to reflect an indeterminate sentence of not less than two (2) nor more than twenty (20) years. Tex.Code Crim.Pro.Ann. art. 44.24 (Vernon Supp.1982–1983); *Salinas v. State,* 625 S.W.2d 397, 405 (Tex.App.— San Antonio 1981).

As reformed, the judgments are affirmed.