Lee Warren **EISENHAUER**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 01–82–0501–CR.

Court of Appeals of Texas,
Houston (1 Dist.).

Aug. 11, 1983.

W. Scott Carpenter, Houston, for appellant.

Timothy G. Taft, Houston, for appellee.

Before WARREN, BASS and BULLOCK, JJ.

## OPINION

BASS, Justice.

This is an appeal from the offense of possession of cocaine, upon a plea of nolo contendere. In accordance with a plea bargain, the court assessed punishment of six years confinement, probated, and fined appellant $2,000. The court granted appellant permission to appeal the denial of his motion to suppress evidence.

The judgment is reversed and the cause is ordered dismissed.

At 1:00 p.m., on February 16, 1982, Officer Furstenfeld, a Houston police officer, received a phone call from an unknown informant concerning an individual named Lee Eisenhauer. The informant advised the officer that Eisenhauer would depart from Houston Intercontinental Airport at 1:30 p.m. en route to Miami. The informant further revealed that Eisenhauer

would return from Miami the same day with cocaine in his possession.

The informant gave the officer a description of Eisenhauer. The description included the following details: Eisenhauer was a white male, approximately 22 years of age, 5′ 10″ tall, weighing 160 pounds, with short, dark hair. He would be wearing a beige tweed jacket, blue jeans, and white tennis shoes.

The officer went to the Continental ticket desk and ascertained that an individual named Lee Eisenhauer was booked on a 1:30 p.m. flight to Miami, and was booked to return on the same day from Miami at 8:03 p.m.

At 8:00 p.m. the officer observed appellant deplane and determined that he fit the description given by the informant. Officer Furstenfeld testified that appellant was carrying a piece of luggage and walked at a fast pace down the concourse, looking over his shoulder twice. Appellant took the escalator to the baggage area, bypassed the area, and approached the north exit. Officer Furstenfeld stated that none of these actions were unusual in an airport.

At this point Officers Burnias and Furstenfeld approached appellant, identified themselves as police officers, and asked if they could speak with him.

Furstenfeld asked appellant for his ticket and identification. Appellant complied with the request. Furstenfeld then advised appellant that he believed appellant to be in possession of cocaine. Appellant's hands began to shake, and he appeared nervous. His forehead broke out in perspiration and he began to stutter.

Furstenfeld requested permission to search appellant and his luggage. However, appellant did not respond. At this juncture, another officer, Officer Castillo, approached appellant and told him that they knew he had gone to Miami to buy cocaine and that they believed that appellant had cocaine in his bag or on his person. Appellant stated, "What happens now?," whereupon Furstenfeld told him that he could consent to a search of his bag and

person or require the officers to procure a warrant.

Another officer, Officer Gannon, joined the group at this time. Appellant was standing, backed into a phone cubicle, with four officers surrounding him.

Although appellant did not consent to a search, his luggage was then searched. No contraband was discovered. Officer Gannon then commented that the cocaine was probably in appellant's sock, and, at the same time, Furstenfeld asked appellant where the cocaine was located. Officer Castillo then told appellant to "give it up," in that he was "caught".

Appellant responded by taking off his jacket and handing it to Officer Burnias, saying only, "It's in the pocket". Two of the officers searched the pockets and a package wrapped in a napkin was discovered. Furstenfeld opened the napkin and observed a plastic bag filled with a white substance, which tested positive for cocaine.

Appellant at no time gave his permission for either a search of his luggage, his jacket, or the napkin-wrapped package. Although he was told that he could either consent to a search or require a search warrant, his luggage was immediately searched without consent. He handed over his jacket only after he had been told to "give it up," because he had been "caught."

In his first ground of error, appellant contends that the trial court erred in denying his motion to suppress evidence, because probable cause for his arrest was not established. He correctly points out that under current Texas law, where a warrantless arrest is based upon an informant's tip, the two-pronged *Aguilar* test must be met. 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). The *Aguilar* test requires a showing of (1) the circumstances underlying the informant's conclusions, i.e., the source of the informant's information; and (2) the reasons the officer deemed the individual credible and the information reliable.

Appellant asserts that the informant's tip in the case at bar was insufficient to establish probable cause for appellant's arrest,

because no evidence was introduced establishing how the informant had obtained his information. Moreover, the officer had not previously received information from the informant. Appellant urges that Officer Furstenfeld's mere assertion that his informant was reliable is an insufficient basis for establishing probable cause for arrest, and cites *Cole v. State,* 484 S.W.2d 779 (Tex.Cr.App.1972), as authority.

Appellant further points out that although the first prong of the *Aguilar* test, the "basis of the informant's knowledge" aspect, may be buttressed by the tip itself, the tip must describe the accused's criminal activity in sufficient detail to demonstrate that the information is based on personal knowledge. That is, the information must be more substantial than a casual rumor circulating in the underworld, and must not constitute merely an accusation predicated on an individual's general reputation. Appellant cites *Spinelli v. U.S.,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), as authority. He argues that the tip in the instant case is so vague, general, and lacking in detail as to constitute mere rumor, and asserts that it does not rise to the specificity required by *Draper v. U.S.,* 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959).

Appellant's contention that the *Aguilar* test was not met is correct.

■ However, contrary to appellant's assertion, the first prong of the *Aguilar* test was satisfied by the highly detailed nature of the informant's allegations. Every detail concerning appellant's physical description, attire, date and time of departure, destination, date and time of arrival, and name, was verified by the officers prior to interception. The only detail not verified prior to interception was possession of cocaine. Authority has held such evidence, when combined with evidence of the informant's reliability, to be sufficiently detailed. See, e.g., *Hicks v. State,* 545 S.W.2d 805 (Tex.Cr.App.1977); *Spinelli, supra; Draper, supra.*

■ Yet, regardless of whether the tip was sufficiently detailed to satisfy the first prong of the *Aguilar* test, the second prong was not met. No evidence was introduced establishing why the officer deemed the informant credible and the information reliable. To the contrary, the officer testified that he had never received any information from the informant previous to the phone conversation of February 16, 1982. He had no idea whether the informant had accurate information when he acted upon it, and he testified that the informant himself had never seen the cocaine appellant was to obtain. According to the officer, *all* the informant knew was that "a person was supposed to go to Miami and obtain some cocaine". It is clear that the officer had no basis, such as past dealings with the informant, upon which to determine that the informant was credible and the information reliable. *Nastu v. State,* 589 S.W.2d 434 (Tex.Cr.App.1979); *Hicks, supra.*

■ It is clear from the evidence adduced at trial through the officer's testimony that appellant's detention was no mere "Terry stop and frisk." The search of appellant's baggage was not justified under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The officers entered into a full-blown search without probable cause. See, e.g., *McVea v. State,* 635 S.W.2d 429 (Tex. App.—San Antonio 1982, PDRR), and cases cited therein. Furthermore, after the search of his luggage failed to reveal any evidence of illegal activity, appellant was told that he had been "caught" and should "give it up." For all practical purposes, at this point he was under arrest. See *Gonzales v. State,* 581 S.W.2d 690 (Tex.Cr.App. 1979); *Hardinge v. State,* 500 S.W.2d 870 (Tex.Cr.App.1973); Art. 15.22 Tex.Code Crim.Pro.Ann. (Vernon 1977). See, by contrast, *Burkhalter v. State,* 642 S.W.2d 231 (Tex.App.—Houston [14th Dist.] 1982).

■ Probable cause was therefore not established, and the ensuing warrantless arrest was not lawful. See, by contrast, *Jones v. State,* 640 S.W.2d 918 (Tex.Cr.App. 1982). Because the arrest was illegal, any evidence derived from the arrest would "absorb the taint" of that illegality, and would therefore properly be subject to suppres-

sion. *Dunaway v. New York,* 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979).[1]

Appellant's first ground of error is sustained.

Appellant's second, third, and fourth grounds of error also address the illegality of the search. In view of the fact that the *Aguilar* test of probable cause was not met, these grounds need not be addressed.

■ In his fifth ground of error, appellant contends that there was insufficient evidence to establish that appellant consented to the search for the package of cocaine seized. He correctly points out that consent to search is not to be lightly inferred, but must be free and voluntary in light of the totality of the circumstances. *Green v. State,* 594 S.W.2d 72 (Tex.Cr.App. 1980). Furthermore, consent is vitiated if granted only in submission to a claim of lawful authority. *Id.* Whether such consent is free and voluntary must be proven by clear and convincing evidence. It is a question of fact whether the accused gave positive and unequivocal consent. *Kolb v. State,* 532 S.W.2d 87 (Tex.Cr.App.1976).

■ Although the fact that the defendant was in custody at the time of his alleged consent did not necessarily prevent such consent from being characterized as free and voluntary, custody is a factor to be considered. *Nastu, supra.* Similarly, "coercive surroundings" is a factor to be considered in determining voluntariness of consent. Although it is unlikely that one coercive element will, standing alone, invalidate consent, where the question of consent is close, the presence of a single coercive element may "tip the scale." Furthermore, the threat by officers to obtain a search warrant, should consent be withheld, is also taken into consideration. See 2 LaFave, *Search and Seizure* § 8.2(1) (2d. ed. 1979).

■ In the instant case appellant was intercepted by four plainclothed officers. The officers told him that they knew he had gone to Miami to purchase cocaine and that they believed that he had it on his person or in his bag. Appellant was asked several times where the contraband was. Although the officers indicated that appellant could withhold consent and force them to get a search warrant, they immediately searched his bag without consent of any kind. The clear implication was that, contrary to the assertion that consent could be withheld, as a practical matter, consent was immaterial. Furthermore, after completion of the unsuccessful search of the bag, the officers indicated that they intended to begin to search his person: they commented that the contraband was probably in appellant's sock. At this point one officer told appellant to "give it up" because he had been "caught." Another officer continued to question appellant as to where the cocaine was. In fact the record reveals that the officer stated that he would not permit the appellant to leave the scene in the event that he would require the officers to secure a search warrant. It was only after the search of his bag without consent and the statement that appellant should "give it up," that appellant handed over his jacket and stated, "It's in the pocket."

■ Appellant never gave a positive statement indicating consent to search; the most that can be argued is that consent was implied by his handing the jacket to the officers and indicating that "it" was in the pocket. However, it certainly appears from the totality of the circumstances that appellant simply acquiesced to lawful authority. He was told to "give it up" and complied with the unequivocal demand. Although it is true that the question of voluntariness is a fact question, and the court, as trier of fact, was entitled to credit the testimony of the officers over that of appellant, *McCallum v. State,* 608 S.W.2d 222 (Tex.Cr.App. 1980), it is the *officer's* testimony itself which indicates that appellant's action in handing over the jacket was in response to

---

1. In *Illinois v. Gates,* —— U.S. ——, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), abolished the two prong standard set forth in *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723, but said, however, that the states could retain and follow the two prong standard at its election. Texas, as yet, has not elected to abandon the two prong standard.

a claim of lawful authority. From the record as a whole, the evidence was insufficient to support a finding that consent was voluntarily given. See *Kolb, supra.* See, by contrast, the sequence of events described in *Myers v. State,* 627 S.W.2d 527 (Tex. App.—Fort Worth 1982, PDRR).

Appellant's fifth ground of error is sustained.

In his sixth ground of error appellant asserts that the trial court erred in failing to suppress the evidence, because appellant's consent to search was secured through the exploitation of his illegal arrest. We agree. As stated above, any purported "consent" was given in direct response to the officer's demand for the alleged contraband, under claim of lawful authority, and, hence, was acquired through exploitation of his illegal arrest. See reasoning in *Green v. State,* 615 S.W.2d 700 (Tex.Cr.App.1980).

Appellant's sixth ground of error is sustained.

The judgment below is reversed and the cause is ordered dismissed.