Lee **EISENHAUER**, Appellant,

v.

The **STATE of Texas**, Appellee.

No. 01–82–0501–CR.

Court of Appeals of Texas, Houston (1st Dist.).

Dec. 31, 1984.

W. Scott Carpenter, Houston, for appellant.

John B. Holmes, Jr., Harris County Dist. Atty., Timothy G. Taft, Jesse Rodriguez, Harris County Asst. Dist. Atty., Houston, for appellee.

Before WARREN, BULLOCK and BASS, JJ.

## ON REMAND

BASS, Justice.

This is an appeal from a conviction for the offense of possession of cocaine upon a plea of nolo contendere. In accordance with a plea bargain, the court assessed punishment at six years confinement, probated, and fined appellant $2,000. The court granted appellant permission to appeal the denial of his motion to suppress evidence. On appeal, this court reversed and ordered the cause dismissed. 657 S.W.2d 184. The state filed a petition for discretionary review which was granted and the judgment of this court was reversed and remanded to this court for consideration of additional issues. *Eisenhauer v. State*, 678 S.W.2d 947 (Tex.Crim. App., 1984).

The Court of Criminal Appeals considered only the question of was whether this court properly applied federal constitutional law in finding a lack of probable cause for the warrantless arrest. The

Court of Criminal Appeals determined that our decision was based solely on federal constitutional grounds and did not reach a consideration of state law. Thus, that court reversed our judgment and remanded the cause to this court to consider the grounds of error with regard to Texas law.

At one o'clock p.m., on February 16, 1982, Officer Furstenfeld, a Houston police officer, received a phone call from an unknown informant concerning an individual named Lee Eisenhauer. The informant advised the officer that Eisenhauer would depart from Houston Intercontinental Airport at 1:30 p.m. en route to Miami. The informant further revealed that Eisenhauer would return from Miami the same day with cocaine in his possession.

The informant gave the officer a description of Eisenhauer. The description included the following details:

Eisenhauer was a white male, approximately 22 years of age, 5'10" tall weighing 160 pounds, with short, dark hair. He would be wearing a beige tweed jacket, blue jeans, and white tennis shoes.

The officer went to the Continental ticket desk and ascertained that an individual named Lee Eisenhauer was booked on a 1:30 p.m. flight to Miami, and was booked to return the same day from Miami at 8:03 p.m. At 8:00 p.m. the officer observed appellant deplane and determined he fit the description given by the informant. Officer Furstenfeld testified that appellant was carrying a piece of luggage and walked at a fast pace down the concourse, looking over his shoulder twice. Appellant took the escalator to the baggage area, bypassed the area, and approached the north exit. Officer Furstenfeld stated that none of these actions were unusual in the airport. At this point Officer Burnias and Furstenfeld approached the appellant, identified themselves as police officers, and asked if they could speak with him. Furstenfeld asked appellant for his ticket and identification. Appellant complied with the request. Furstenfeld then advised appellant that he believed him to be in possession of cocaine. Appellant's hands began to shake and he appeared nervous. His forehead broke out in perspiration and he began to stutter.

Furstenfeld requested permission to search appellant and his luggage. However, appellant did not respond. Officer Castiglo then approached appellant and told him that they knew he had gone to Miami to buy cocaine and that they believed him to have cocaine in his bag or on his person. Appellant then stated "What happens now," whereupon Furstenfeld told him that he could consent to a search of his bag and person or require the officers to procure a warrant. Another officer, Officer Gannon, joined the group at this time. Appellant was standing backed into a phone cubicle with four officers surrounding him. Appellant's luggage was then searched but no contraband was discovered. Officer Gannon then commented that the cocaine was probably in appellant's sock, and at that time Furstenfeld asked appellant where the cocaine was located. Officer Castiglo then told appellant to "give it up", that he was "caught".

Appellant responded by taking off his jacket and handing it to Officer Burneas saying only "It's in the pocket". Two of the officers searched the pockets and a package wrapped in a napkin was discovered. Furstenfeld opened the napkin and observed a plastic bag full of a white substance, which tested positive for cocaine.

Appellant at no time gave permission for the search of his luggage, jacket, or the napkin-wrapped package. Although he was told that he could either consent to a search or require a search warrant, his luggage was immediately searched without consent. Officer Furstenfeld admitted, on cross-examination, that appellant handed over his jacket only after he had been told to "give it up" because he had been "caught."

In his first ground of error, appellant contends that "The trial court erred in failing to suppress the evidence, for the reason that appellant's arrest was without probable cause". He contends that under current Texas law, where a warrantless search

is based upon an informant's tip, the two-pronged Aguilar test must be met. *Aguilar v. State*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). More specifically, appellant asserts that the informant's tip in this case was insufficient to establish probable cause for appellant's arrest because no evidence was introduced establishing how the officer had obtained his information from the informant.

Appellant also asserts in his second ground of error that there was insufficient evidence to establish the credibility of the informant. Appellant argues that Officer Furstenfeld's mere assertion that his informant was reliable is an insufficient basis for establishing probable cause for a warrantless arrest.

An anonymous telephone call does not, in itself, provide sufficient basis for a warrantless arrest or search as evidence must also be introduced establishing why the officer deemed the informant credible and the information reliable. Evidence and standards applicable to the assessment of probable cause for a warrantless arrest and search are at least as stringent as the standards applied for the issuing of an arrest or search warrant. *Wilson v. State*, 621 S.W.2d 799 (Tex.Crim.App.1981). Under Texas law, an affidavit for a search warrant based upon hearsay must satisfy the two-prong test that the magistrate be informed of the underlying circumstances which render the information reliable and that he be informed of specific factual allegations which render the source of the information reliable. Tex.Code Crim.P. art. 18.01 (Vernon 1977); *Winkles v. State*, 634 S.W.2d 289 (Tex.Crim.App.1982). *Glass v. State*, 681 S.W.2d 599 (Tex.Crim.App.1984).

In the present matter, the officer testified that he had never received any information from the informant previous to the phone conversation of February 16, 1982. He had no idea whether the information was accurate when he acted upon it, and he testified that the informant himself had never seen the cocaine the appellant was to obtain. According to the officer, all the informant knew was that "a person was supposed to go to Miami and obtain some cocaine". There was no testimony as to the credibility of the informant or even an affirmative showing that the officer had previously received information from the informant.

Appellants first and second grounds of error are sustained.

Appellant asserts through his third ground of error that there was insufficient evidence to establish that appellant had committed an offense so there was no probable cause for the arrest.

The record contains testimony by Officer Furstenfeld that when confronted at the airport appellant appeared nervous. However, as pointed out in *Glass v. State*, 681 S.W.2d 599 (Tex.Crim.App.1984), "in this day and time when a citizen is suddenly facing an imminent confrontation with police officers for unknown reasons, most citizens with nothing to hide will nevertheless manifest an understandable nervousness in the presence of the officer."

Additionally, in *Wilson v. State*, 621 S.W.2d 799, the court held that police officers who had received information from an informant that the defendant would be going to a phencyclidine lab and would be driving a particular truck, did not have probable cause to arrest the defendant or to conduct a search. In *Ebarb v. State*, 598 S.W.2d 842 (Tex.Crim.App.1978), the court stated that it "behooved" the trial court to suppress evidence obtained when the "specific and articulable" circumstances which justify the investigatory stop were based solely on the tip of an informant. Clearly, an anonymous telephone call would provide sufficient justification for police officers to initiate an investigation, but it will not justify a warrantless arrest or search. *Clemons v. State*, 605 S.W.2d 567 (Tex.Crim.App.1980).

Texas cases have consistently held that not only must the information received from an informant be specific enough to render it reliable, but that there must be allegations of such a specific and

factual nature to conclude that the source was credible. *Tolentino v. State*, 638 S.W.2d 499 (Tex.Crim.App.1982); *Wilson v. State*, 621 S.W.2d 799 (Tex.Crim.App.1981); *Green v. State*, 615 S.W.2d 700 (Tex.Crim. App.1981); *Kleasen v. State*, 560 S.W.2d 938 (Tex.Crim.App.1978). Texas cases further hold that a search conducted without a warrant issued on probable cause is per se unreasonable. *Nastu v. State*, 589 S.W.2d 434 (Tex.Crim.App.1979, *cert. denied* 447 U.S. 911, 100 S.Ct. 3000, 64 L.Ed.2d 862). Evidence seized as a result of any legal detention without probable cause should be suppressed. *See Jones v. State*, 567 S.W.2d 209 (Tex.Crim.App.1978). Appellant's third ground of error is sustained.

Appellant's fourth ground of error also addresses the illegality of the search by asserting that there was ample time to procure an arrest warrant. However, in view of our conclusion that there was not probable cause for the arrest or search, this ground need not be addressed.

 In appellant's fifth ground of error, he claims that there was insufficient evidence to establish his consent to the search. We agree and sustain this ground of error. A consent to search must be free and voluntary in light of the totality of the circumstances, and such consent is vitiated if granted only in submission to a claim of lawful authority. *Green v. State*, 594 S.W.2d 72 (Tex.Crim.App.1980). Whether such consent is voluntary must be proven by clear and convincing evidence, and it is a question of fact whether the accused gave positive and unequivocal consent. *Kolb v. State*, 532 S.W.2d 87 (Tex.Crim.App.1976).

In the instant case appellant was intercepted by four officers. The officers told him that they knew he had gone to Miami to purchase cocaine and believed it to be on his person or in his bag. Appellant was asked several times where the contraband was. Although the officers indicated that appellant could withhold consent and force them to get a search warrant, they immediately searched his bag without consent of any kind. The clear implication was that, contrary to the assertion that consent could be withheld as a practical matter, consent was immaterial. Furthermore, after completion of the unsuccessful search of the bag, the officers indicated that they intended to begin to search his person when they commented that the contraband was probably in his sock. At this point one officer told appellant to "give it up" because he had been "caught." Another officer continued to question appellant as to where the cocaine was. In fact, the record reveals that the officer stated that he would not permit appellant to leave the scene in the event that he would require the officers to secure a search warrant. It was only after the search of his bag without consent and the statement that appellant should "give it up" that appellant handed over his jacket and stated, "It's in the pocket".

Appellant argues that because he never gave a positive statement indicating his consent to search, the trial court erred in failing to suppress the evidence since the consent to search was obtained through the exploitation of an illegal arrest. We agree. After examining the totality of the circumstances, we conclude that after the appellant was told to "give it up", he simply acquiesced to lawful authority and complied with that unequivocal demand. From the record as a whole, we find the evidence to be insufficient to support a finding that consent was voluntarily given. *See Kolb v. State*, 532 S.W.2d 87.

 In his sixth ground of error, appellant asserts that the trial court erred in failing to suppress the evidence because appellant's consent to search was secured through the exploitation of his illegal arrest. As stated above, any purported "consent" was given in direct response to the officer's demand for the alleged contraband, under claim of lawful authority, and, hence, was acquired through exploitation of his illegal arrest. *Lee Green v. State*, 615 S.W.2d 700 (Tex.Crim.App.1980).

Appellant's sixth ground of error is sustained.

The judgment below is reversed and the cause is ordered dismissed.