The STATE of Texas, Appellant,

v.

Pervis Joseph COMEAUX, Appellee.

No. 3–88–091–CR.

Court of Appeals of Texas,
Austin.

Feb. 21, 1990.

Discretionary Review Granted
May 23, 1990.

---

Jim Mattox, Atty. Gen. and Ann Gray, Asst. Atty. Gen., Austin, for appellant.

Christopher M. Gunter, Fitzgerald, Meissner, Augustine & Gunter, Austin, for appellee.

Before SHANNON, C.J., and CARROLL and ABOUSSIE, JJ.

ABOUSSIE, Justice.

The State of Texas appeals the trial court's order granting appellee's motion to suppress evidence of his blood-alcohol test results. We will affirm the trial court's order.

On appeal, the State claims that the trial court erred by granting the motion because (1) appellee consented to the search, and (2) any search was private because it was not conducted by a state agent. The State discusses facts which the trial court allegedly "assumed," "found," and "felt," but the trial court did not file any findings of fact.

The trial court has broad discretion in ruling on pretrial matters and in determining whether evidence is admissible. Whether to suppress the results of a search is committed to the trial court's discretion. *State v. Carr*, 774 S.W.2d 379,

380 (Tex.App.1989, no pet.); *Gilmore v. State*, 666 S.W.2d 136, 148 (Tex.App.1983, pet. ref'd). In reviewing a trial court's ruling on a motion to suppress evidence, the appellate court will not reverse that decision absent a clear showing that the trial court abused its discretion. *Williams v. State*, 535 S.W.2d 637, 639–40 (Tex.Cr.App.1976); *Gilmore*, 666 S.W.2d at 148. As the sole trier of fact at the hearing on the motion, the trial judge is free to believe or disbelieve all or any part of any witness's testimony. *Taylor v. State*, 604 S.W.2d 175, 177 (Tex.Cr.App.1980); *Carr*, 774 S.W.2d at 380; *Hamilton v. State*, 772 S.W.2d 571, 574 (Tex.App.1989, pet. ref'd). The trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Clark v. State*, 548 S.W.2d 888, 889 (Tex.Cr.App. 1977). The same rules necessarily apply in cases where the State appeals the trial court's adverse decision. *Carr*, 774 S.W.2d at 380. In the instant cause, the trial court granted the motion to suppress, and we are concerned only with whether it clearly abused its discretion in doing so. The reasons behind the trial court's exercise of its judgment will not create reversible error if the decision itself, regardless of any purported basis, did not exceed the limits of the court's discretion. *Quinones v. State*, 592 S.W.2d 933, 940 (Tex.Cr.App.1980).

On August 6, 1987, the State charged appellee Pervis Comeaux with the offense of driving while intoxicated on July 20, 1986.[1] Tex.Rev.Civ.Stat.Ann. art. 6701*l*-1 (Supp.1990). Shortly before 2:00 a.m. on Sunday, July 20, 1986, a car collided with a van driven by appellee on Hamilton Pool Road in Travis County. The evidence suggests that, at the time of the accident, appellee and his passengers were returning from a party that they had catered, where they apparently had been working, cooking, and serving food and beverages. The driver of the car died at the scene. Appellee and his two passengers sustained injuries.

Department of Public Safety Trooper Chester L. Dixon arrived at the scene at approximately 2:12 a.m. Many volunteers and emergency medical personnel already were present. Dixon saw appellee, but did not approach him. Felicia Barron, one of appellee's passengers, told the officer that, while driving in an easterly direction, oncoming headlights suddenly appeared in their lane. Dixon's accident reconstruction confirmed that the deceased's car crossed the double yellow lane markers, entered the eastbound lane, and collided head-on with appellee's van. Dixon found no evidence to indicate any fault on appellee's part. Appellee later corroborated Barron's version of the events.

Appellee was taken to Brackenridge Hospital in Austin. Dixon continued his investigation at the scene. Among items on the ground that emergency personnel had removed from the van, Dixon found an ice chest containing two unopened cans of beer. No open or empty cans were discovered, and Dixon stated that he had no reason to suspect that appellee had consumed any alcohol or was in any way at fault. As part of his investigation, Dixon radioed the Department of Public Safety dispatcher to obtain a blood sample from appellee. City of Austin police officer Craig Jackson received the request while on duty at the hospital.

At the hospital, Dr. Peter Davidson examined appellee and ordered a blood sample to be drawn for testing to assist in diagnosis and treatment of appellee's injuries. Nurse Kay Mikus drew the sample at 3:43 a.m. The doctor did not order a blood-alcohol analysis for medical purposes because no need was indicated. Neither the doctor nor the nurse noted any signs of intoxication on appellee's chart.

After the blood had been drawn, Jackson requested that Mikus give him part of the sample for analysis. Jackson signed and gave the nurse a form entitled "Statutory Authorization Mandatory Blood Test Specimen." The form stated that Jackson had

---

**1.** The information alleges that the offense took place on July 20, 1987, but the parties agree that the correct date is July 20, 1986.

arrested appellee and was requesting a sample of blood pursuant to Tex.Rev.Civ. Stat.Ann. art. 6701*l*–5 (Supp.1990). Jackson had not spoken to appellee at that time, appellee was not under arrest, and Jackson had no reason to suspect appellee was intoxicated or was a criminal suspect.

When Dixon arrived at the hospital, Jackson gave him the blood sample. Dixon interviewed appellee at about 5:00 a.m. The State contends that appellee gave consent to the blood test during this interview. The Department of Public Safety later tested appellee's blood sample at Dixon's request and to his surprise reported a .17 level of blood alcohol concentration. Appellee eventually was charged with driving while intoxicated. At a pretrial hearing on March 24, 1988, the trial court granted appellee's motion to suppress the blood test results. The State perfected this appeal pursuant to Tex.Code Cr.P.Ann. art. 44.01 (Supp.1990).

In its first point of error, the State argues that appellee consented to the State's obtaining his blood sample for testing; therefore, the results of the test are admissible and should not have been suppressed. Because appellee was not under arrest, statutory consent was not required. *See* Article 6701*l*–5 (statute requires consent from one under arrest).

■ Both the United States and the Texas Constitutions prohibit unreasonable governmental search and seizure. *Kolb v. State*, 532 S.W.2d 87, 89 (Tex.Cr.App.1976). As a general rule, the taking of a blood sample is considered a search and seizure within the meaning of the Fourth Amendment to the United States Constitution, and Article I, Section 9, of the Texas Constitution. *Schmerber v. California*, 384 U.S. 757, 767, 86 S.Ct. 1826, 1833–34, 16 L.Ed.2d 908 (1966); *Aliff v. State*, 627 S.W.2d 166, 169 (Tex.Cr.App.1982); *Escamilla v. State*, 556 S.W.2d 796, 798 (Tex.Cr.App.1977). A search conducted without a warrant is per se unreasonable, subject only to a few limited exceptions. *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967); *Reyes v. State*, 741 S.W.2d 414, 430 (Tex.Cr.App.1987). When

the legality of the search is put in issue, the State has the burden to prove by clear and convincing evidence that a warrantless search falls within an exception. *Valcarcel v. State*, 765 S.W.2d 412, 414 (Tex.Cr. App.1989); *Lalande v. State*, 676 S.W.2d 115, 116 (Tex.Cr.App.1984). It is agreed that during the time in question, appellee was not under arrest and that no warrant for a search or for his arrest had been sought or obtained. Because there was no search warrant, any search conducted was per se unreasonable and, therefore, unconstitutional, unless the State proved it was permissible under an exception. *Reyes*, 741 S.W.2d at 430.

■ One exception to the rule requiring both a warrant and probable cause applies where the search is conducted pursuant to consent. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 2043–44, 36 L.Ed.2d 854 (1973); *Juarez v. State*, 758 S.W.2d 772, 776 (Tex.Cr.App. 1988). If the State is relying on this ground to legitimate a warrantless search, it must prove by clear and convincing evidence that the consent was freely and voluntarily given. *Reyes*, 741 S.W.2d at 430; *Lalande*, 676 S.W.2d at 117. The consent must be positive and unequivocal, and police must not have employed duress or coercion, actual or implied, in obtaining permission to search. *Reyes*, 741 S.W.2d at 430; *Meeks v. State*, 692 S.W.2d 504, 509 (Tex.Cr.App.1985); *Escamilla*, 556 S.W.2d at 799. If the State proved that appellee consented to a search, any deficiencies would be cured, and the results of the search would be admissible. *See Juarez*, 758 S.W.2d 772; *Reyes*, 741 S.W.2d 414. Texas has adopted the "totality of the circumstances" test to determine whether consent to a search was voluntarily obtained. *Reyes*, 741 S.W.2d at 430; *Meeks*, 692 S.W.2d at 510. Thus, whether there was consent, and whether the consent was voluntary, are questions of fact to be determined under the totality of all circumstances. *Schneckloth*, 412 U.S. at 227, 93 S.Ct. at 2047–48; *Juarez*, 758 S.W.2d at 775; *Dickey v. State*, 716 S.W.2d 499, 504 (Tex. Cr.App.1986). In this instance, the fact

was to be decided initially by the trial court from the evidence adduced at the hearing. *Oliver v. State,* 414 S.W.2d 679 (Tex.Cr. App.1967).

Jackson, Dixon, and Davidson testified at the hearing; appellee did not. Dixon testified that he first spoke to appellee at the hospital after Jackson gave him the blood sample. The emergency department was extremely busy and crowded. He went to the x-ray table where appellee was awaiting x-ray examination and began talking to him about the accident. It was approximately 5:00 a.m., three and one-half hours after the accident. Dixon testified that appellee's face was swollen, and that he had blood in and around his mouth area. Medical records introduced into evidence show that appellee's nose had been broken and that he had nasal and thigh lacerations (that at the time of the conversation were not yet sutured), chipped teeth, and bruised ribs. The nurse's records indicate that appellee was "awake and oriented times three," meaning as to person, place, and event. Dixon testified that appellee was lying down during their entire conversation. Dixon asked appellee to tell him briefly what happened during the accident. Appellee then described the facts of the accident to Dixon. Dixon then asked appellee whether he had been drinking, to which appellee replied that he had consumed two cans of beer before 10:00 p.m. the night before. Dixon testified that this was the first indication he had that appellee had been drinking. In Dixon's opinion, appellee was not intoxicated at the accident scene or at the hospital. Dixon was examined concerning whether appellee had consented to giving a blood sample, to which he replied, "[I]t had already been taken. It didn't matter. But yes ... he said he would." When pressed, Dixon testified:

> I just asked him if he objected to giving a blood sample. And he said, "No." It was in a conversation. *It wasn't like a direct question. We were just talking* about the accident. I said, *"Would you have any problem giving us a blood sample?"* And he said, *"No."* And *that was the extent of that.*
>
> \* \* \* \* \* \*

[I]t was in a—it was in *more of a casual conversation thing than a real request.* We were just talking, and it was to the effect of "Would you have any objections to giving me a blood sample?" And he said, "No." It wasn't like I was—I was acting as a DPS officer but *I wasn't stressing the fact that I wanted him to give me a blood sample.* It was just more of a conversational thing. And the *reason* I did that is, *if he had an objection to it maybe I should look further into this.* And he didn't. He just—it was just a spontaneous answer. "No, I wouldn't have an objection."

(Emphasis added.)

Dixon did not give appellee *Miranda* warnings, nor did he tell appellee that he could refuse consent. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Dixon did not directly request a blood sample or take one at that time. Dixon did not inform appellee why he wanted the blood, what would be done with it, or ask consent to perform a blood-alcohol test. He did not inform appellee that the hospital had drawn blood earlier and that Dixon already had obtained a portion of that blood and had it in his possession. He did not ask appellee for permission to analyze the blood that already had been obtained.

The State complains that the evidence in dispute should not have been suppressed because it was obtained with appellee's consent. By its order, the trial court showed that it was not so persuaded. This Court could only reverse the trial court's decision if we were to hold that the fact of consent somehow was conclusively shown. Under the evidence, we do not so hold. We are unwilling to conclude, upon this record, that the trial court abused its discretion by impliedly refusing to find that appellee consented to the search in question. *Duff v. State,* 546 S.W.2d 283, 286 (Tex.Cr.App. 1977).

We note that the court heard evidence that this conversation took place under difficult circumstances. Appellee was still stained with blood, waiting for treatment in

a crowded hospital emergency room at 5:00 in the morning, after working late into the night and then being involved in a severe automobile accident that resulted in a death. He had been trapped in his vehicle and after having been freed, was taken from the scene on a stretcher suffering serious injuries. His young passengers also had been injured, one seriously. The record shows that appellee was 48 years old at the time of the accident. There is no evidence as to appellee's intelligence or education. The conversation with Dixon lasted only a few minutes, was extremely informal, and "consent" to search his blood apparently consisted of a one-sentence, abstract inquiry by a law enforcement officer. The burden of proving that consent was given cannot be discharged by showing no more than acquiescence to a claim of lawful authority. *Bumper v. North Carolina,* 391 U.S. 543, 548–49, 88 S.Ct. 1788, 1791–92, 20 L.Ed.2d 797 (1968); *Reyes,* 741 S.W.2d at 430; *Dickey,* 716 S.W.2d at 504. Again, the consent must be both "knowing and intelligent." *Schneckloth,* 412 U.S. at 236, 93 S.Ct. at 2052.

We think that the trial court, as fact-finder, could reasonably have been unpersuaded from the totality of the circumstances that appellee positively and unequivocally consented to a requested search. By granting the motion, the court indicated that it was not convinced that appellee gave consent, and that the State failed to carry its burden of proof. The court was the sole fact-finder. Even if it believed the officer's testimony, it was not required to be persuaded that appellee's statement constituted consent to the search undertaken.

■ There are other exceptions to the rule that warrantless searches are unreasonable per se. Although not raised by point of error, the State argues that exigent circumstances existed which justified the search. If the officer has probable cause to arrest appellee, and there are exigent circumstances necessitating immediate search, a warrantless search may be constitutionally permissible. *Schmerber,*

384 U.S. at 768–71, 86 S.Ct. at 1834–36; *Aliff,* 627 S.W.2d at 170. We recognize the established line of cases concerning blood tests, holding that exigent circumstances may exist due to the dissipation over time of alcohol in the blood stream. *Schmerber,* 384 U.S. at 770–71, 86 S.Ct. at 1835–36; *Aliff,* 627 S.W.2d at 169.[2] There was no evidence offered as to whether the officer was unable to obtain a search warrant in time to avoid this effect, or whether dissipation would continue once the blood already had been drawn and preserved for analysis.

However, in this case, there clearly is no evidence that either Dixon or Jackson had probable cause to arrest appellant. The test for probable cause is:

> Whether at that moment the facts and circumstances within the officer's knowledge and of which he had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the arrested person *had committed or was committing an offense.*

*Lunde v. State,* 736 S.W.2d 665, 667 (Tex. Cr.App.1987) (emphasis original). An officer's hunch, suspicion, or good faith perception are not alone sufficient to constitute probable cause for an arrest. *Id.* at 667. Once again, probable cause is to be determined from a totality of the circumstances. *Angulo v. State,* 727 S.W.2d 276, 278 (Tex.Cr.App.1987); *State v. Lopez,* 763 S.W.2d 939, 943 (Tex.App.1989, pet. ref'd). The results of the search cannot be considered to determine whether there was probable cause for the search in the first place. *Taylor,* 604 S.W.2d at 178.

Upon reviewing the record that the trial court had before it, we believe that it was not unreasonable for the court to refuse to find that Dixon had probable cause. That being the case, the court could properly conclude that the warrantless search was impermissible.

Because the search was conducted without a warrant, it was per se unreasonable. The trial court did not clearly abuse its discretion in granting the motion to sup-

---

**2.** This rationale has recently been called into doubt by later medical studies. *See Pesina v.*

*State,* 676 S.W.2d 122, 127–28 (Tex.Cr.App.1984) (Clinton, J., dissenting).

press, and the State has not shown that the search came within any of the exceptions as a matter of law. We thus overrule the State's first point of error.

■ The State also argues that the trial court erred in suppressing the results of the search because no state agent conducted a search. It is well-established that the United States and Texas Constitutions do not apply to purely private searches. *United States v. Jacobsen,* 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984); *Vargas v. State,* 542 S.W.2d 151, 153 (Tex.Cr.App.1976); *Hayes v. State,* 634 S.W.2d 359, 362 (Tex.App.1982, no pet.). In cases where the courts determined whether there was state action in administering blood-alcohol tests, however, the private party performed the actual test. *Weaver v. State,* 721 S.W.2d 495 (Tex.App.1986, pet. ref'd); *Hayes,* 634 S.W.2d 359. Here, the test was performed by the Department of Public Safety's lab. Although the nurse already had drawn blood, the officer seized that blood and ordered a test that the medical personnel did not request or require. It is the result of this test that was suppressed. Thus, there was state involvement in the search. The State concedes as much on page five of its brief where it asserts, "the search was of the blood itself and the search, the blood alcohol analysis, occurred well after appellee consented to it." We overrule the State's second point of error.

The trial court's ruling on the motion to suppress is affirmed.

Affirmed.