TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-94-00410-CR







Jose Alaniz, Appellant



v.



The State of Texas, Appellee








FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT


NO. 0924713, HONORABLE WILFORD FLOWERS, JUDGE PRESIDING








 Appellant entered a negotiated plea of guilty to the offense of possession of a usable
quantity of marihuana of fifty pounds or less, but more than five pounds. Controlled Substances
Act, 71st Leg., R. S., ch. 678, sec. 1, § 481.121, 1989 Tex. Gen. Laws 2230, 2939 (Tex. Health
& Safety Code Ann. § 481.121, since amended). Punishment was assessed at confinement for
five years, probated, and a fine of $2,500. Appeal is limited to the trial court's overruling
appellant's motion to suppress. See Tex. R. App. P. 40(b)(1). We will overrule appellant's point
of error and affirm the judgment of the trial court.

 Austin police officer John Sisson testified that on July 5, 1992, he received a call
from Austin airport officer Romelia Reyes informing him of a message she had received from an
unnamed customs officer. Reyes advised Sisson that the customs officer had obtained the
following information from a confidential informant:



On that date, she [Reyes] called and said that Harlingen called and said that there
was a tall Hispanic male with a black mustache flying in from Harlingen carrying
drugs. She stated that according to whoever she talked to that he was coming in
on the 2:05 flight, that he checked in two suitcases, tag numbers 37-99-89 and tag
number 37-99-90, and that the bags were described as a black tweed suitcase and
a beige flowered suitcase.



 Sisson arrived at the Austin airport in time for arrival of the flight and followed a
person, identified as appellant, who fit the description he had been furnished. Sisson observed
appellant remove the only two bags from the luggage carousel that matched the description of
those alleged to have been carried by the suspect. Sisson, who had been trained in drug
interdiction and drug characteristics, observed what he characterized as unusual behavior by
appellant. Sisson stated that "as soon as he [appellant] came off the plane, he started looking all
around--He appeared to be nervous and then he started walking fast."

 After appellant claimed his bags and started to leave, Sisson approached him and
advised him that he was an officer with the narcotics interdiction unit and would like to talk to
him. Sisson advised appellant that he was not under arrest, and appellant expressed a willingness
to talk to the officer. Appellant told Sisson that he was visiting an aunt in Austin for a "couple
of days." Sisson advised appellant that he had received information that he was carrying drugs
from Harlingen. Appellant denied drug involvement and agreed to Sisson's request to search his
bags. On discovering that the bags were locked, Sisson asked appellant for a key. Appellant
denied having a key and declined Sisson's request to open them another way. Upon Sisson asking
how he was going to open the bags, appellant "just shrugged his shoulders."

 Sisson testified that when he asked appellant if he had any narcotics in his luggage,
"[H]e became very nervous. His voice was quivering. He couldn't stand still." At this point,
Sisson advised appellant that he, along with his luggage, would be detained until a drug detector
dog sniffed the bags. Sisson observed that the numbers on the tickets attached to appellant's bags
matched the claim check numbers he had been furnished by Reyes. Sisson also noted that
appellant's ticket showed that he had paid cash for a one-way ticket from a city that was known
as a drug location source. Based on the foregoing observation, Sisson took appellant and his
luggage to the airport police office where appellant was advised of his Miranda rights. Appellant
declined to answer Sisson's question about why he was carrying two pieces of luggage for a two-day visit.

 Upon learning that a drug detector dog was not available that day, a Sunday,
appellant was told that he was free to leave but that his bags would be detained until the next day
when the dog could sniff them. Sisson stated that appellant agreed to leave his bags, a phone
number, and an address where he could be reached in Austin, and left the airport. A check of the
address and phone number showed that both were nonexistent. The drug detector dog sniffed the
bags the following day and gave a positive alert. A search warrant for appellant's luggage was
obtained at 3:00 p.m. on Monday. A search of the bags resulted in the seizure of six bundles of
marihuana wrapped in plastic with baby powder between each layer of marihuana.

 In oral argument before this Court, counsel for appellant stated a factual dispute
existed regarding whether Sisson possessed all of the information he detailed before detaining
appellant. In State v. Comeaux, 786 S.W.2d 480 (Tex. App.--Austin 1990), aff'd, 818 S.W.2d
46 (Tex. Crim. App. 1991), issues were raised about whether the trial court "assumed, "found"
and "felt" certain facts in ruling on a motion to suppress. The Comeaux court set forth the
following standard by which a trial court's rulings on a motion to suppress are reviewed on
appeal:


In reviewing a trial court's ruling on a motion to suppress evidence, the appellate
court will not reverse that decision absent a clear showing that the trial court
abused its discretion. As the sole trier of fact at the hearing on the motion, the
trial judge is free to believe or disbelieve all or any part of any witness's
testimony. The trial court is the sole judge of the credibility of the witnesses and
the weight to be given their testimony.



Id. at 482 (citations omitted).

 The thrust of appellant's contention is that there was not probable cause for the
officer to make a warrantless seizure of his luggage following his arrival in Austin. Probable
cause for a warrantless arrest exists at the moment the facts and circumstances within the officer's
knowledge, and of which he has reasonably trustworthy information, are sufficient to warrant a
prudent person in believing that the arrested person has committed or is committing an offense. 
Britton v. State, 578 S.W.2d 685, 689 (Tex. Crim. App. 1978), cert. denied, 455 U.S. 955
(1979). The reviewing court must look at the "totality of the circumstances" in determining
whether there existed a substantial basis for concluding that there was probable cause at the time
in question. See Angulo v. State, 727 S.W.2d 276, 278 (Tex. Crim. App. 1987). Circumstances
short of probable cause may justify temporary detention for purposes of investigation. See Meeks
v. State, 653 S.W.2d 6, 12 (Tex. Crim. App. 1983). The officer must have possessed articulable
facts that created some reasonable suspicion to connect the suspect with unusual activity that was
related to crime. See Hoag v. State, 728 S.W.2d 375, 380 (Tex. Crim. App. 1987). "In
justifying a stop, the police officer can make rational inferences from the articulable facts based
upon the officer's personal knowledge and experience." Davis v. State, 829 S.W.2d 218, 220
(Tex. Crim. App. 1992).

 Appellant contends that United States v. Place, 462 U.S. 696 (1983) governs the
instant cause. Place's behavior aroused the suspicion of officers as he waited in line at the Miami
Airport to purchase a ticket to New York. As Place proceeded to the gate for his flight, officers
approached him and asked to see identification and his ticket. Place complied with these requests
and consented to the search of two bags he had checked. Because the flight was about to depart,
the bags were not searched. Place's statement to the officers that he had recognized that they were
police coupled with a variance in street addresses on the checked luggage, aroused the officer's
suspicion. Additional investigation revealed that neither address existed and a telephone number
Place had given the airline belonged to still another address. Based on the foregoing information,
Miami officers called D.E.A. (Drug Enforcement Administration) authorities in New York. 
D.E.A. agents observed suspicious behavior when Place deplaned at La Guardia Airport. After
Place claimed his luggage, the agents approached him and identified themselves as federal narcotic
agents, to which Place responded that he knew they were "cops" and had spotted them on his
arrival. Place advised the agents that Miami airport officers had searched his luggage, a
representation that was contrary to information furnished the agents by Miami authorities.

 When Place refused to consent to a search of his luggage, one of the agents advised
him that they were going to take the luggage to a federal judge to obtain a search warrant. Place
was allowed to leave, but was furnished a telephone number where the agents might be reached. 
Agents took Place's luggage to Kennedy Airport where a sniff test by a trained narcotics detection
dog resulted in a positive reaction to the smaller of the two bags. Approximately ninety minutes
had elapsed since the seizure of the bags. Because it was late on Friday afternoon, the agents
waited until Monday morning to obtain a search warrant for the bag. Upon opening the bag, the
agents discovered a quantity of cocaine. Id. at 698-99. The court held that while reasonable
suspicion would allow officers to detain luggage for a brief investigative stop, the detention of
Place's luggage for over ninety minutes was unreasonable in the absence of probable cause. See
id. at 709.

 In United States v. Sokolow, 490 U.S. 1 (1989), D.E.A. agents knew the following
factors about Sokolow when he and his companion deplaned in Honolulu: (1) he had earlier paid
$2,100 for two round-trip tickets from Honolulu to Miami from a roll of $20 bills, which
appeared to contain a total of $4,000; (2) he had traveled under a name that did not match the
name under which his telephone number was listed; (3) he had an original destination of Miami,
a source city of illicit drugs; (4) he and his companion stayed in Miami for only 48 hours, even
though a round trip flight from Honolulu to Miami takes 20 hours; (5) he appeared nervous during
his trip; and (6) he checked none of his luggage. Sokolow and his companion, along with their
luggage, were taken to the D.E.A.'s airport officer where a narcotic detection dog gave a positive
alert to Sokolow's bags. It was too late to secure a search warrant for the luggage. The agents
retained the luggage and allowed Sokolow and his companion to leave. A search warrant was
obtained the following morning, a search was conducted, and cocaine was seized from Sokolow's
luggage. Id. at 3-6. The court held that while any one of these factors is consistent with innocent
travel, when taken together they amount to reasonable suspicion to justify a temporary detention
for purposes of investigation. Id. at 9. Implicit in Sokolow is that reasonable suspicion ripened
into probable cause when the drug identification dog gave a positive alert.

 In Eisenhauer v. State, 678 S.W.2d 947 (Tex. Crim. App. 1984), (1) the Court stated
that the only question before it was whether the Court of Appeals had properly applied federal
constitutional law in finding there was no probable cause for the defendant's warrantless arrest. 
The facts in Eisenhauer are similar to those in the instant cause except that the initial information
received by Houston airport officer Furstenfeld was from a reliable confidential informant. The
informant advised the officer that a Lee Eisenhauer would be leaving on a 1:30 p.m. flight to
Miami and returning the same day with cocaine. The suspect's physical description and the
clothing he would be wearing were included in the information furnished by the informant. 
Furstenfeld determined that a Lee Eisenhauer was on a 1:30 p.m. flight to Miami and had booked
a return flight due to arrive in Houston at 8:00 p.m. that evening. At 8:03 p.m., Furstenfeld saw
a person fitting the description given by the informant deplane from a Miami-Houston flight. The
suspect walked at a fast pace, looking over his shoulder on two occasions. Furstenfeld and a
fellow officer approached the suspect, identified themselves, and asked if they could talk to him. 
In response to the officer's request, the suspect furnished a ticket and other information that bore
the name Lee Eisenhauer. Furstenfeld stated that Eisenhauer became nervous, his hands began
to shake, perspiration broke out on his forehead, and he began to stutter when he was advised that
they believed he was in possession of cocaine. Eisenhauer was arrested and a search of his person
resulted in the seizure of cocaine. Id. at 949-50. The court stated that even though the informant
was anonymous, he gave the officers detailed information about the suspect's attire, the schedule
for his trip, and the purpose of the trip that enabled the officers to verify the informant's
information except whether the suspect had accomplished his mission and whether the cocaine was
on his person or in his bag. The court held that these circumstances, along with the suspect's
actions on deplaning on return, together with his reactions when he was advised that the officers
believed he possessed cocaine brought from Miami, furnished a substantial basis for the officers
to conclude from the totality of the circumstances that there was probable cause to arrest
Eisenhauer and conduct a search incident thereto. Id. at 955.

 In Daniels v. State, 718 S.W.2d 702 (Tex. Crim. App.), cert. denied, 479 U.S.
885 (1986), officers were at Houston Intercontinental Airport observing passengers deplane from
a nonstop flight from Miami in an attempt to identify and intercept narcotic carriers. The officers
were not in possession of any information regarding the passengers, but conducted the surveillance
because the flight was from Miami, a source city for narcotics. The officers observed what they
considered suspicious behavior by Daniels and his companion. Daniels was detained and a search
of his person resulted in the seizure of cocaine. Id. at 703-04. The court found that the conduct
the officers considered suspicious could describe the actions of a very large category of
presumably innocent travelers and furnished no grounds for reasonable suspicion to justify an
investigatory stop. Id. at 705. We find it significant that the court noted that this seemingly
innocent activity might have been rendered suspicious if there had been an informant's tip as in
Eisenhauer. Id. at 706.

 Appellant urges that the officer did not believe that he had probable cause to search
his luggage until Monday after the dog had given a positive alert to his luggage. It was not until
this time that a search warrant was obtained, a lapse of time that would clearly be unreasonable
in the absence of probable cause under Place. The legality of the seizure of appellant's bags turns
on an objective assessment of the officer's actions in light of the information he possessed at the
time of the seizure rather than the subjective intent of the officer. See Gordon v. State, 801
S.W.2d 899, 907 (Tex. Crim. App. 1990).

 The pivotal issue in the instant cause is whether the officer had probable cause to
seize appellant's luggage following the investigative detention of appellant. The officer's
observations and investigations following appellant's arrival showed: (1) he was traveling from
a source city, Harlingen; (2) he paid cash for a one-way ticket; (3) his luggage was locked and
he did not have a key for it; (4) he merely shrugged his shoulders when asked how he was going
to get into his luggage; (5) he looked all around as he came off the plane, appeared nervous and
walked fast; and (6) when asked if he had narcotics in his luggage, he became very nervous, his
voice quivered, and he could not stand still. If the officer's information had been limited to the
foregoing factors, probable cause for the seizure of appellant's luggage would not have existed
under Place. However, the officer had been furnished information from an unnamed informant
whose reliability was not shown that a physically described Hispanic male would be arriving on
a 2:05 p.m. flight from a drug source city, Harlingen, carrying drugs. Included in the report was
the description of the bags and their tag numbers. The officer was able to confirm all of the
foregoing information except appellant's possession of drugs.

 An informant's veracity is relevant in determining the value of his report; it is one
indicia of reliability to be balanced against others in analyzing the totality of the circumstances. 
Illinois v. Gates, 462 U.S. 213, 230, 234 (1983). A low degree of veracity, however, can be
compensated for by some other indicia of reliability. Id. at 233. In particular, corroboration of
information in a tip may enhance the credibility of an informant. Because an informant is right
about some things, he is more probably right about other facts, usually the critical, unverified
facts. Spinelli v. United States, 393 U.S. 410, 427-28 (1969) (White, J., concurring); Angulo,
727 S.W.2d at 279. Moreover, the fact that the informer was anonymous is not a critical factor. 
See Eisenhauer, 678 S.W.2d at 955.

 In the instant cause we hold that the totality of the circumstances, i.e., the officer's
verification of every facet of the informer's information except the appellant's possession of
contraband, the appellant's actions in the airport after his arrival, together with his reactions when
the officer asked if he had narcotics in his bag, furnished the officer with probable cause to seize
appellant's luggage. See Angulo, 727 S.W.2d at 280; Eisenhauer, 678 S.W.2d at 955. 
Appellant's point of error is overruled.

 The judgment is affirmed.



 

 Tom G. Davis, Justice

Before Justices Jones, Kidd and Davis*

Affirmed

Filed: July 12, 1995

Do Not Publish

 








* Before Tom G. Davis, Judge (retired), Court of Criminal Appeals, sitting by assignment. 
See Tex. Gov't Code Ann. § 74.003(b) (West 1988).
1.   Eisenhauer's conviction was initially reversed by the First District of the Houston Court of
Appeals, 657 S.W.2d 184 (Tex. App.--Houston [1st Dist.] 1983). The State's petition for review
was granted and the Court of Criminal Appeals reversed and remanded in the above cause. On
remand, the Court of Appeals again reversed the conviction. 684 S.W.2d 782 (Tex.
App.--Houston [1st Dist.] 1984). On petition for review, the Court of Criminal Appeals reversed
the judgment of the Court of Appeals and affirmed the judgment of the trial court, 754 S.W.2d
159 (Tex. Crim. App.), cert. denied, 488 U.S. 848 (1988), holding under Texas law that the
totality of the circumstances test for probable cause applies to warrantless and warrant seizures
of persons and property. Id. at 164. Using this standard the Court upheld Eisenhauer's arrest
and the search incident thereto.