Ozzi WALKER, Appellant,

v.

The STATE of Texas, Appellee.

No. 03–95–00756–CR.

Court of Appeals of Texas, Austin.

June 5, 1997.

L. Nora Soliz, Icenhauer–Ramirez & Hubner, P.C., Austin, for Appellant.

Ronald Earle, District Attorney, C. Bryan Case, Jr., Assistant District Attorney, Austin, for State.

Before ABOUSSIE, JONES and DAVIS, JJ.*

TOM G. DAVIS, Justice.

Our opinion and judgment issued on April 3, 1997 are withdrawn, and the following is issued in lieu thereof.

After finding appellant guilty of aggravated sexual assault, Tex. Penal Code Ann. § 22.01 (West 1994), the jury assessed punishment at confinement for forty years. Appellant asserts two points of error, contending that the trial court erred by (1) admitting into evidence appellant's written confession, and (2) denying appellant's motion to suppress evidence. We will overrule appellant's points of error and affirm the judgment of the trial court.

---

* Before Tom G. Davis, Judge (retired), Court of Criminal Appeals, sitting by assignment. *See*

In reviewing a trial court's ruling on a motion to suppress evidence, an appellate court will not reverse that decision absent a clear showing that the trial court abused its discretion. *See State v. Comeaux,* 786 S.W.2d 480, 482 (Tex.App.—Austin 1990), *aff'd,* 818 S.W.2d 46 (Tex.Crim.App.1991). Even if the trial court gives the wrong reason for its decision, it will be sustained on appeal if the decision is correct on any theory of the law applicable to the case. *See Romero v. State,* 800 S.W.2d 539, 543 (Tex.Crim. App.1990). In making its findings of fact, the trial court is free to believe or disbelieve all or any part of any witness's testimony. The trial judge is the sole judge of the credibility of the witnesses and the weight to be given to their testimony. *See Comeaux,* 786 S.W.2d at 482.

The victim was walking to Texas French Bread at 29th and Rio Grande in Austin for a cup of coffee at about 6:15 a.m. on April 10, 1995 when she became aware that a man was following her. The victim was alarmed and dropped her purse in the middle of the road and told the man to take it. After stating that he did not want her purse, the assailant grabbed her by the neck, took a knife out, pulled the victim into an alley and threatened to kill her if she did not cooperate. The victim was directed to lie down on the ground and remove her clothes. She was afraid that the assailant was going to kill her. The victim complied with assailant's request and he proceeded to rape her. Using information provided by the victim, including the name of a nearby business appearing on his shirt, police were able to compile a photographic lineup from which the victim identified appellant as her assailant. The victim later made an in-court identification of appellant as the assailant. The victim also identified the knife, retrieved from appellant by police, as the one used at the time in question. DNA comparison between appellant's blood and a vaginal swab taken from the victim showed that only one in 79,720,000 African–American males possess the same genetic markers found in the vaginal swab and appellant's blood.

Tex. Gov't Code Ann. § 74.003(b) (West 1988).

■ The testimony of Sergeant Jeffrey Hampton of the Austin Police Department and the testimony of appellant are in direct conflict as to whether appellant ever advised Hampton that he wanted counsel. The reviewing court should not disturb these findings absent a clear abuse of discretion. *See Cantu v. State*, 817 S.W.2d 74, 77 (Tex.Crim. App.1991).

In the instant cause, the trial court found that appellant's testimony was not credible. In light of Hampton's explicit denial that appellant had requested counsel, we find that the trial court's findings are reasonably supported by the evidence. Armed with a warrant for appellant's arrest for aggravated sexual assault, Hampton arrested appellant at 6:35 a.m. on April 12, 1995. After appellant arrived at the Travis County Jail, Hampton took appellant to his office, read him his rights, and obtained his signature waiving such rights at 8:45 a.m. Hampton prepared a consent to search for bodily specimens and had appellant read it aloud in the presence of two witnesses before appellant signed it at 9:35 a.m. Appellant was taken before a magistrate and admonished as required by law. At 11:20 a.m. on April 13, Hampton enlisted a nurse to collect bodily specimens from appellant. The trial court found that appellant did not make any request for an attorney, or mention having made a request for an attorney on this occasion or at any other time. Hampton visited appellant again on the afternoon of April 13, read appellant his rights, and appellant waived his rights and signed a full written confession without making any mention of having signed a request for an attorney.

■ The core issue in determining the admissibility of appellant's confession and the fruits of the search is the effect of an instrument titled "Request for appointment of attorney," dated April 12, 1995, with appellant's signature affixed thereto. Appellant urges that under the Fifth Amendment and the Fourteenth Amendments to the United States Constitution, once a suspect has invoked his right to counsel, all interrogation by the police must cease until counsel is appointed or until the suspect reinitiates conversation.

The instrument appellant signed is directed to the "Judge of the Above Entitled Court." Appellant's name, the charged offense, numbered cause and court are handwritten on the printed form. The instrument appellant signed provides:

> I am the defendant in the above numbered and entitled cause, and I am wholly destitute of means to provide counsel, and I hereby request the Court to appoint competent counsel to represent me in this cause.

The instrument shows that the request was signed before a person titled "Personal Bond Officer." At the bottom of the form is an order signed by the trial court on April 17, 1995, appointing counsel to represent appellant in this cause. Appellant testified at the suppression hearing that he told "personal bond, I would need an attorney, a court appointed attorney. They asked me if I would sign up for one and I said, yes."

■ Appellant urges that his request for counsel was made to an agent of the court and thus knowledge of appellant's request was imputed to the court and to law enforcement officials. Appellant cites *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981) and *Minnick v. Mississippi*, 498 U.S. 146, 111 S.Ct. 486, 112 L.Ed.2d 489 (1990), to support his contention. *Edwards* and *Minnick* were cases in which police (*Edwards*) and federal agents (*Minnick*) had begun interrogation when the defendants requested a lawyer. At this point interrogation ceased; however, law enforcement officials later reinstated questioning of the defendants without counsel present that resulted in the defendants giving confessions. These cases held that when counsel is requested, interrogation must cease, and officials may not reinstate interrogation without counsel, whether or not the accused has consulted with his attorney. *Minnick*, 498 U.S. at 153, 111 S.Ct. at 491. A police officer may not claim ignorance of a defendant's request for counsel made before another police officer or a court. *Michigan v. Jackson*, 475 U.S. 625, 634, 106 S.Ct. 1404, 1410, 89 L.Ed.2d 631 (1986).

The pertinent statutory provision authorizing a "personal bond officer" provides for the appointment, as well as the duties of this office, as follows:

Sec. 1. Any county, or any judicial district with jurisdiction in more than one county, with the approval of the commissioners court of each county in the district, may establish a personal bond office to gather and review information about an accused that may have a bearing on whether he will comply with the conditions of a personal bond and report its findings to the court before which the case is pending.

. . .

Sec. 5. (a) A personal bond pretrial release office established under this article shall:

(1) prepare a record containing information about any accused person identified by case number only who, after review by the office, is released by a court on personal bond;

(2) update the record on a monthly basis; and

(3) post a copy of the record in the office of the clerk of the county court in any county served by the office.

(b) In preparing a record under Subsection (a), the office shall include in the record a statement of:

(1) the offense with which the person is charged;

(2) the dates of any court appearances scheduled in the matter that were previously unattended by the person;

(3) whether a warrant has been issued for the person's arrest for failure to appear in accordance with the person's release;

(4) whether the person has failed to comply with conditions of release on personal bond; and

(5) the presiding judge or magistrate who authorized the personal bond.

(c) This section does not apply to a personal bond pretrial release office that on January 1, 1995, was operated by a community corrections and supervision department.

Sec. 6. (a) Not later than April 1 of each year, a personal bond office established under this article shall submit to the commissioners court or district and county judges that established the office an annual report containing information about the operations of the office during the preceding year

(b) In preparing an annual report under Subsection (a), the office shall include in the report a statement of: . . .

(3) the number of accused persons who, after review by the office, were released by a court on personal bond; and

(4) the number of persons described by Subdivision (3):

(A) who were convicted of the same offense or of any felony within the six years preceding the date on which charges were filed in the matter pending during the person's release; or

(B) who failed to attend a scheduled court appearance;

(C) for whom a warrant was issued for the person's arrest for failure to appear in accordance with the terms of the person's release; or

(D) who were arrested for any other offense while on the personal bond.

(c) This section does not apply to a personal bond pretrial release office that on January 1, 1995, was operated by a community corrections and supervision department.

Tex.Code Crim. Proc. Ann. art. 17.42 (West Supp.1997).

We will assume the "personal bond office" was created pursuant to article 17.42 since appellant has brought it to our attention for the first time on rehearing. However, the record is silent on this matter. Article 17.42 makes the appointment permissive as evidenced by its provision that the office *may* be established and further recognizes that a personal bond office had been operated by a community corrections and supervision department.

A personal bond officer is not a peace officer. *See* Tex.Code Crim. Proc. Ann. art. 2.12 (West Supp.1997). However, other state officials have been held to have been acting

as an arm of law enforcement as a result of their duties. While *Cates v. State,* 776 S.W.2d 170 (Tex.Crim.App.1989) considered the taking of a confession by a Texas Department of Human Resources (DHR) investigator, we find it relevant to the scope of authority of a state agency. The DHR investigator, although not a peace officer, was paid by the State for the express purpose of discovering and investigating allegations of child abuse, and turning her findings over to the proper authorities responsible for the prosecution of child offender. *Id.* at 173. The court held she was acting as an arm of law enforcement. Thus, she was governed by the laws applicable to peace officers in taking a confession. The limited authority delegated a personal bond officer under article 17.42 would clearly not constitute such officer as a peace officer or an arm of the law.

The authority given the personal bond officer in the instant cause was limited to gathering and reviewing information about an accused to determine eligibility for a personal bond, and making a follow-up report on those released on personal bonds. Under these circumstances, we find that the trial court did not abuse its discretion in finding that the personal bond officer was not an agent of either the State or the court to whom a request for an attorney would carry any legal significance; and that appellant's right to an attorney did not attach until April 17, 1995, when he was appointed an attorney. Accordingly, we hold that the request made for an attorney was not imputed to the court or to law enforcement. Appellant's first point of error is overruled.

In his second point of error, appellant contends the trial court erred in denying his motion to suppress the fruits of a search because he invoked his right to counsel prior to the officer obtaining his consent to search, thereby rendering his arrest involuntary. The trial court, in its findings of fact, found appellant signed a consent to search for bodily specimens at 9:53 a.m. on April 12 after appellant had been read his rights and Hampton had obtained appellant's signature waiving such rights. Appellant contends that his signature to the form requesting an attorney rendered the seizure of bodily samples

involuntary. Our finding that appellant's request for counsel did not have the effect of invoking counsel at the time it was signed is dispositive of this point of error.

We hold that the trial court's finding that appellant freely and voluntarily consented to the seizure of bodily specimens was supported by the evidence. Appellant's second point of error is overruled.

The judgment is affirmed.